712 So.2d 656 (1998)
Claire HICKS, Deanna McElroy Downs, Lori A. Dallimore, Sherry Juneau and Julie Nugent
v.
CENTRAL LOUISIANA ELECTRIC COMPANY, INC., Vivian Ordone and Rhonda Clark.
No. 97 CA 1232.
Court of Appeal of Louisiana, First Circuit.
May 15, 1998.
*657 Barbara G. Haynie, Metairie, for Plaintiffs-Appellants.
Adrianne L. Baumgartner, Covington, for Defendants-Appellees Vivian Ordone and Rhonda Clark.
Barclay D. Beery, New Orleans, for Defendant-Appellee Central Louisiana Electric Co., Inc.
Before LOTTINGER, C.J., and SHORTESS and FOGG, JJ.
SHORTESS, Judge.
Claire Hicks, Deanna Downs, Sherry Juneau, and Julie Nugent (plaintiffs) are all former employees of Central Louisiana Electric Company (CLECO). Plaintiffs served as *658 customer service clerks at CLECO's Slidell, Louisiana, office. Plaintiffs, who are all white females, brought suit against CLECO, a black co-worker, Rhonda Clark, and CLECO's black supervisor, Vivian Ordone (collectively called defendants), alleging racial discrimination, hostile work environment, and retaliatory discharge pursuant to Chapter Four of the Louisiana Fair Employment Practice statutes[1] and the Louisiana Human Rights statutes.[2]
The district court, on defendants' motions, granted summary judgment on all claims. Finding no material issues of fact in dispute, the court determined defendants, as a matter of law, were entitled to judgment in their favor. The court reasoned "[t]hough there was definitely acrimony among [CLECO] employees, the testimony of the plaintiffs does not support a finding that this acrimony was caused by racial preferences or harassment."
Although plaintiffs set forth two assignments of error,[3] this matter may be disposed of by addressing the appropriate standards of summary judgment.

ANALYSIS
A summary judgment is a procedural device used to avoid a full scale trial when there is no genuine factual dispute.[4] Summary judgments are now a "favored" animal of the law, designed to secure the just, speedy, and inexpensive determination of every action.[5] Though favored, the granting of summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits, if any, create no genuine issue of material fact.[6]
In reviewing summary judgments, appellate courts must examine the issues and facts presented de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate.[7] The determinative factor of materiality is the applicable substantive law.[8] Thus, a particular fact in dispute may only be deemed material if such facts potentially insure or preclude recovery, affect the litigant's ultimate success, or determine the outcome of the legal dispute.[9]
Plaintiffs' action against defendants is brought pursuant to the Louisiana Fair Employment Practice Statutes and the Louisiana Human Rights Statutes. These acts, designed to embody the protections of federal anti-discrimination laws, specifically prohibit discriminatory conduct in the workplace. Because of the substantial similarities between state and federal anti-discrimination laws, courts may appropriately consider interpretations of federal statutes when construing Louisiana law.[10]
Plaintiffs allege they were subjected to a hostile work environment. A hostile environment is one that does not affect an employee's economic benefits, but instead creates a hostile or offensive working environment.[11] In order to prevail in a hostile-environment claim, plaintiffs must assert and prove: 1) they belong to a protected group; *659 2) they were subjected to harassment; 3) the harassment was motivated by discriminatory animus (race); (4) the harassment affected a term, condition, or privilege of employment; and 5) the employer knew or should have known of the harassment and failed to take proper remedial action.[12]
Plaintiffs' testimony regarding the circumstances giving rise to this litigation indicates the problems complained of stem from the practice of defendants Clark and Ordone and another black co-worker, Velina Carter, abusing break and lunch-hour privileges. Plaintiffs claim this habitual conduct was fostered and/or condoned by the supervisor Ordone and ultimately resulted in a heavier workload for plaintiffs and other co-workers. Plaintiffs further maintain that when a white co-worker, Lori Dallimore, was awarded a supervisory position that defendant Clark also sought, the individually-named defendants and other black co-workers began to "shun" white employees. There were additional allegations that Clark, whose job duties included processing payroll submissions, was intentionally scrutinous of plaintiffs' submitted time sheets. Plaintiffs initially sought redress from their immediate supervisor, Dallimore. Dallimore directed plaintiffs' complaints to CLECO's regional supervisor, Homer Fouquier. Fouquier contacted CLECO's human resources department, which dispatched a two-person investigatory team to address the complaints. Plaintiffs testified they were "too intimidated" to discuss their concerns with the black company representatives in the presence of the offenders. Plaintiffs then sought a "secret" meeting with CLECO general manager Mark Mavrinac. Mavrinac met exclusively with the white employees and provided them with a venue to discuss their grievances. Mavrinac specifically asked plaintiffs if they felt they were being discriminated against based on race. All plaintiffs denied the problems were race-oriented. Following the meeting with plaintiffs, Mavrinac held a general meeting with all employees of the Slidell office. He imposed a policy of strict adherence to the rules governing break time, lunch hours and co-operation among the entire staff.
Even assuming all facts as alleged by plaintiffs, they have failed to sustain their initial burden of establishing a prima facie case of discrimination. Plaintiffs admit they believed the problems initially stemmed from Ordone's poor supervisory skill and defendant Clark's poor work attitude. Plaintiffs further admit both black and white employees were forced to carry the load of those employees who abused break and lunch privileges. Plaintiffs testified they had never been personally subjected to racial slurs. The only instance of a racially-derogatory remark being made occurred when defendant Clark, in a private phone conversation that Dallimore was monitoring, referred to plaintiffs' meeting with Mavrinac as "the KKK meeting." However, this isolated incident is insufficient to establish a racially-hostile environment. For racist comments, slurs, and jokes to constitute a hostile environment, there must be "more than a few isolated incidents of racial enmity."[13] At best, plaintiff's allegations establish a pattern of rude, inconsiderate behavior. However, incidents of rude behavior, without more, are insufficient to create an actionable hostile work environment.[14]
Plaintiffs have also failed to establish that CLECO knew of the alleged harassment and failed to take remedial action. The record is replete with evidence that CLECO investigated plaintiffs' grievances and attempted to rectify the complained of problems. Moreover, CLECO cannot be charged with "knowing" that plaintiffs' claims were based on racial discrimination when plaintiffs themselves denied the problems were racially oriented.
With regard to individual defendants Clark and Ordone, plaintiffs allege individual *660 liability pursuant to the Louisiana Fair Employment Practice acts. The statutes under which plaintiffs seek relief[15] do not provide for redress against fellow employees. However, there exists statutory language within these acts which may place Ordone and Clark within the purview of an employer.[16] This classification however is of minimal importance in that the United States Fifth Circuit has specifically declared that an employee cannot be sued in his individual capacity under Title VII.[17] The fifth circuit concedes that a liberal interpretation of discrimination statutes may, in fact specific circumstances, be construed to place immediate supervisors within the realm of "employers."[18] Even applying this "liberal interpretation" to this matter, plaintiffs, for the reasons cited in the analysis of the claim against CLECO, have failed to satisfy their burden of establishing a prima facie case of discrimination.

CONCLUSION
For the foregoing reasons, we agree with the trial court that there remains no genuine issue of material fact and, accordingly, affirm its grant of summary judgment in favor of all defendants. Costs of this appeal are assessed to plaintiffs.
AFFIRMED.
NOTES
[1] La.R.S. 23:331-334 (formerly 23:1006-1008).
[2] La. R.S. 51:2231-2265.
[3] Plaintiffs allege: 1) the granting of summary judgment was erroneous because material issues of fact remain in dispute regarding allegations of racial harassment, discrimination, hostile work environment and retaliation; and 2) plaintiffs set forth evidence to support allegations of racial harassment, discrimination, hostile work environment and retaliation sufficient to create a question of material fact to be determined by the jury.
[4] Saurage v. Palermo, 95-1698, p. 6 (La.App. 1st Cir. 4/4/96), 672 So.2d 351, 355.
[5] See La. C.C.P. art. 966.
[6] Id.; see also Alexander v. Lowes Cos., 96-2169, p. 3 (La.App. 1st Cir. 9/19/97), 701 So.2d 239, 240-41.
[7] Potter v. First Federal Savings & Loan Ass'n, 615 So.2d 318, 325 (La.1993).
[8] La. C.C.P. art. 967.
[9] Trahan v. Rally's Hamburgers, 96-1837, p. 5 (La.App. 1st Cir. 6/20/97), 696 So.2d 637, 640.
[10] Id., 696 So.2d at 641.
[11] Wallace v. Texas Tech Univ., 80 F.3d 1042, 1049, n. 9 (5th Cir.1996).
[12] Cortes v. Maxus Exploration Co., 977 F.2d 195, 199 (5th Cir.1992).
[13] Snell v. Suffolk County, 782 F.2d 1094, 1103 (2d Cir.1986); see also Harris v. Forklift Systems, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).
[14] Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).
[15] Former La. R.S. 23:1006 and La. R.S. 51:2231-2265.
[16] Prior to its appeal by Acts 1997, No. 1409, § 4, effective August 1, 1997, La. R.S. 51:2232(4) of the Louisiana Human Rights Act provided:

"Employer" means the state or any of its political subdivisions, any person employing eight or more persons within the state, or any person acting as an agent of an employer, directly or indirectly. (Emphasis added.)
[17] Grant v. Lone Star Co., 21 F.3d 649, 653 (5th Cir.), cert. denied, 513 U.S. 1015, 115 S.Ct. 574, 130 L.Ed.2d 491 (1994).
[18] Garcia v. Elf Atochem North America, 28 F.3d 446, 451 (5th Cir.1994), abrogated on issue of same-sex harassment only in Oncale v. Sundowner Offshore Servs., ___ U.S. ___, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998).