STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2019 CA 1326

ERYON LUKE

VERSUS

CPLACE FOREST PARK SNF, LLC

Judgment Rendered: __**MAY 1 1 2020**__

* * * * *

On Appeal from the
Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Trial Court No. 621,493

The Honorable William A. Morvant, Judge Presiding

* * * * *

Victor J. Woods, Jr.                    Attorneys for Plaintiff/Appellant,
Elizabeth L. LeBlanc                    Eryon Luke
Addis, Louisiana

Christine S. Keenan                     Attorney for Defendants/Appellees,
Baton Rouge, Louisiana                  CPlace Forest Park SNF, LLC d/b/a
                                        Nottingham Rehabilitation Center and
                                        Traditions Senior Management, Inc.

* * * * *

BEFORE:   HIGGINBOTHAM, PENZATO, AND LANIER, JJ.

**PENZATO, J.**

Appellant, Eryon Luke, appeals a trial court judgment granting appellees, CPlace Forest Park, SNF, LLC d/b/a Nottingham Rehabilitation Center (Nottingham) and Traditions Senior Management, Inc. (Traditions), summary judgment and dismissing Luke's remaining claim against them. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

Luke originally filed a petition for damages against Nottingham under Title VII of the Civil Rights Act of 1964 (Title VII), as amended by the Pregnancy Discrimination Act of 1978, 42 U.S.C. 2000e-(k) (PDA); the Family Medical Leave Act, 29 U.S.C. § 2601, et seq., 29 C.F.R. Part 825 (FMLA); and the Louisiana Employment Discrimination Law, La. R.S. 23:301 *et seq.* (LEDL). Luke alleged that Nottingham discriminated against her by terminating her employment because she was pregnant and had lifting restrictions imposed on her by a doctor based on her pregnancy. Nottingham removed the matter to the United States District Court for the Middle District of Louisiana (Middle District). In the Middle District, Nottingham filed a motion for summary judgment seeking to have all of Luke's claims dismissed in their entirety. The Middle District granted the summary judgment in part and dismissed with prejudice all Luke's claims under Title VII, as amended by the PDA, the FMLA, and La. R.S. 23:342(2)(b) (based on denial of full leave under LEDL). Nottingham's claims pursuant to La. R.S. 23:303(B) to assess damages and fees against Luke were denied. The Middle District denied the motion for summary judgment in part, dismissed Luke's claim under La. R.S. 23:342(4) (based on denial of reasonable accommodation) without prejudice, and remanded to the Nineteenth Judicial District Court for consideration of this claim.

2

Following the remand, Luke filed a supplemental and amended petition adding Traditions[1] as a defendant. Luke asserted that Nottingham and Traditions (collectively "defendants") acted as a single integrated enterprise, alleging that both defendants had violated La. R.S. 23:342(4) by refusing to accommodate her by transferring her to a less strenuous or hazardous position for the duration of her pregnancy.

Defendants filed a motion for summary judgment on January 17, 2019.[2] The motion for summary judgment asserted that Luke failed to comply with the mandatory pre-suit filing requirements in La. R.S. 23:303(C) with respect to Traditions and failed to establish that there were vacant light duty positions available that could accommodate the lifting restrictions placed upon her during pregnancy. The trial court held a hearing on July 1, 2019, and recognized that the only claim remaining was pursuant to La. R.S. 23:342(4). The trial court orally noted that Luke had failed to comply with the thirty-day notice requirement in La. R.S. 23:303(C) with respect to Traditions. However, the trial court deferred ruling on that basis due to its granting summary judgment based on the merits of the claim finding no violation of La. R.S. 23:342(4) by defendants. The trial court noted that only one light duty position was available at the time, and it was held by another employee. The trial court further indicated that the position for which Luke was hired required lifting over thirty pounds. There were no positions requiring lifting of less than thirty pounds. The trial court orally granted the

---

[1] Traditions is the management company for Nottingham.

[2] Traditions had previously filed an exception of prescription, which was granted by the trial court. During the pendency of the appeal of that exception, Nottingham filed a motion for summary judgment. This court reversed the trial court's grant of the exception of prescription in *Luke v. CPlace Forest Park SNF, LLC*, 2017-0864 (La. App. 1st Cir. 5/18/18), 250 So. 3d 995, 999, finding that Traditions and Nottingham were joint tortfeasors. Thereafter, both Nottingham and Traditions filed a motion for summary judgment, which is the subject of this appeal.

motion for summary judgment and signed a judgment in accordance with its oral ruling on July 24, 2019, dismissing Luke's remaining claim. It is from this judgment that Luke appeals.

## ASSIGNMENTS OF ERROR

Luke assigns as error that the trial court erred in finding no genuine issues of material fact as to whether she was entitled to a reasonable accommodation pursuant to La. R.S. 23:342(4), in making credibility determinations, and in weighing summary judgment evidence.

## SUMMARY JUDGMENT

Summary judgment procedure is favored and "is designed to secure the just, speedy, and inexpensive determination of every action .... and shall be construed to accomplish these ends." La. C.C.P. art. 966(A)(2). In reviewing the trial court's decision on a motion for summary judgment, this court applies a *de novo* standard of review using the same criteria applied by the trial courts to determine whether summary judgment is appropriate. *Reynolds v. Bordelon*, 2014-2371 (La. 6/30/15), 172 So. 3d 607, 610.

After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions. La. C.C.P. art. 966(A)(4).

The mover bears the burden of proving that he is entitled to summary judgment. However, if the mover will not bear the burden of proof at trial on the

subject matter of the motion, he need only demonstrate the absence of factual support for one or more essential elements of his opponent's claim, action, or defense. La. C.C.P. art. 966(D)(1). If the moving party points out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense, then the nonmoving party must produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1); *Holmes v. Lea*, 2017-1268 (La. App. 1st Cir. 5/18/18), 250 So. 3d 1004, 1009.

In ruling on a motion for summary judgment, the trial court's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Janney v. Pearce*, 2009-2103 (La. App. 1st Cir. 5/7/10), 40 So. 3d 285, 289, *writ denied*, 2010-1356 (La. 9/24/10), 45 So. 3d 1078. A "genuine" issue is a triable issue, which means that an issue is genuine if reasonable persons could disagree; if on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for a trial on that issue. A fact is "material" when its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery. *Kasem v. State Farm Fire & Cas. Co.*, 2016-0217 (La. App. 1st Cir. 2/10/17), 212 So. 3d 6, 13.

## LAW AND DISCUSSION

Luke was employed as a certified nursing assistant (CNA) with Nottingham, a skilled nursing facility, beginning October 11, 2011.[3] On December 2, 2011, Luke learned that she was six weeks pregnant with twins, and her treating physician directed her not to perform any heavy lifting for two weeks. Luke worked on Saturday and Sunday, December 3 and 4, 2011, with the weekend

---

[3] The record also contains a hire date of October 10, 2011.

5

supervisor permitting her to work without doing any heavy lifting on those days. On Monday, December 5, 2011, Luke was informed that she would be unable to work until the lifting restriction was lifted, since the CNA position required heavy lifting. On December 12, 2011, her treating physician permitted Luke to return to work with no restrictions. Between December 12, 2011, and January 21, 2012, Luke worked numerous shifts, but left early on several occasions or "called in" sick. The last full shift she worked was on January 19, 2012. On January 20, 2012, Luke worked "a few minutes," and on January 21, 2012, she worked for four hours.

On January 22, 2012, Luke brought a note to Nottingham from her treating physician which stated, "No heavy lifting throughout pregnancy[.]" However, Rachael Carcamo, the Human Resources Payroll Manager of Nottingham, informed her that she could not work with those restrictions. On the next day, January 23, 2012, she was placed on FMLA leave.[4] At that time, Luke requested to work as a "nurse dispatch," which she claimed required no heavy lifting. She alleged that there was an opening for that position, but that Nottingham denied her request. On January 26, 2012, Luke brought another note to Nottingham from her treating physician indicating that she could not lift over thirty pounds during her pregnancy. Thereafter, the treating physician, at Nottingham's request, filled out paperwork dated February 8, 2012, stating that Luke was capable of working with her only restriction being lifting anything over thirty pounds. Luke wrote a letter to Nottingham dated February 16, 2012, requesting to be accommodated, noting

---

[4] It is unclear from the record as to the type of leave used by Luke. An employee of Nottingham testified by affidavit that because Luke had not been employed for at least twelve months or worked 1250 hours she was ineligible for FMLA, and was thereby allowed to take four months leave pursuant to Louisiana law from January 23, 2012, to May 23, 2012. However, a document evidencing Luke's termination attached to that affidavit refers to Luke's FMLA leave expiring, as does the deposition testimony of the affiant.

that she could perform all aspects of a CNA job other than lifting patients. The treating physician also submitted an undated letter to Nottingham noting that Luke could work throughout her pregnancy as long as she did not lift over thirty pounds. Luke claims that she was not allowed to return to work, was forced to use FMLA leave, and was terminated effective May 25, 2012. She sought damages from defendants due to the alleged unlawful employment practices.

Defendants submitted numerous documents in connection with the motion for summary judgment evidencing the facts of the case. Luke worked the 2:00 p.m. to 10:00 p.m. shift. Her duties as a CNA included making sure the patients had dinner and assisting them with eating; ensuring the cleanliness of the patients and the bed linens; changing the patients and the bed linens; pushing patients in a wheelchair; making sure patients using a walker did not fall; turning patients in the bed and physically lifting them; lifting a patient from the bed into the wheelchair; responding to "call lights" of the patients; and the general grooming and personal care of the patients. Defendants also produced the deposition of Luke in which she admitted that she was unable to perform her job as a CNA with the lifting restriction placed upon her during pregnancy.

Louisiana Revised Statute 23:342 provides:

It shall be an unlawful employment practice unless based upon a bona fide occupational qualification:

* * *

(4) For any employer to refuse to temporarily transfer a pregnant female employee to a less strenuous or hazardous position for the duration of her pregnancy if she so requests, with the advice of her physician, where such transfer can be reasonably accommodated, provided, however, that no employer shall be required by this Part to create additional employment which the employer would not otherwise have created, nor shall such employer be required to discharge any employee, transfer any employee with more seniority, or promote any employee who is not qualified to perform the job.

We agree with defendants that the plain language of Louisiana Revised Statute 23:342(4) requires only that an employer transfer a pregnant employee to a less strenuous or hazardous position where the transfer can be reasonably accommodated. However, the employer is not required to create additional positions, discharge any employee, transfer an employee with more seniority, or promote an employee who is not qualified to perform a job. La. R.S. 23:342(4).

Defendants contend that the record establishes there were no light duty positions available at the time of Luke's employment. Carcamo testified by affidavit that the majority of Luke's job duties required lifting and moving patients. She also stated that defendants "did not offer light duty positions to any employees under any circumstances." Furthermore, "there were no available light duty positions vacant at that time." This was confirmed by Donna Duplantis, the Regional Director of Human Resources for Nottingham, who also testified by deposition that defendants attempted to find a position Luke could perform with her restrictions, including looking at other facilities. Carcamo recognized that Luke contended she should have been allowed to answer phones at the nurses' station and call "out call lights." However, Carcamo testified that the only similar position is that of a "ward clerk," which entailed duties of answering phones, preparing and maintaining resident files, completing admission paperwork, and assisting CNAs, on occasion, in the performance of their duties. Carcamo maintained that the "ward clerk" position from 2:00 p.m. to 10:00 p.m. was held by another employee since July 23, 2009. Carcamo also testified that she contacted Duplantis regarding Luke's physical restrictions that prevented her from performing the duties of a CNA. Duplantis testified that she consulted with Carcamo and the Director of Nursing in determining that there was no light duty

work available for Luke. They also reviewed possible positions at other facilities owned by Nottingham, but found no positions available.

Despite the arguments of Luke, La. R.S. 23:342(4) did not require the defendants to temporarily transfer her "to a less strenuous or hazardous position for the duration of her pregnancy and/or modify her job assignments and duties as was done by her immediate supervisor initially." Luke's immediate supervisor, Michael Boligny, testified by deposition that Luke was permitted to work light duty a "couple of times" when she first discovered she was pregnant. Carcamo specifically testified that the light duty was for December 3 and 4, 2011. Carcamo told Luke on December 5, 2011, that she could not work until the lifting restrictions were removed. Defendants assert that the fact that Luke's shift supervisor allowed her to work light duty prior to Human Resources evaluating Luke's restrictions did not amount to a light duty position being available for the duration of her pregnancy. We agree with defendants that the decision to allow Luke to work a light duty schedule when she was initially given the lifting restrictions does not establish there were light duty positions available during her entire pregnancy. *See Minnihan v. Mediacom Commc'ns Corp.*, 779 F.3d 803, 812 (8th Cir. 2015) (finding that an employer's voluntary temporary accommodation does not concede a job function is non-essential).

Luke further maintains that even if no light duty position was available, Nottingham was required by La. R.S. 23:342(4) to modify her job duties to accommodate her lifting restrictions. Defendants argue that La. R.S. 23:342(4) does not require them to reasonably accommodate Luke, but only to transfer a pregnant employee to a less strenuous position if one is available. Luke's contention that defendants could have easily accommodated her by providing another employee to help with lifting or providing a mechanical lift is inapposite.

9

The evidence is that Nottingham did not possess a mechanical lift at the time Luke was employed. As to having another employee help with lifting, La. R.S. 23:342(4) does not require an employer to "create additional employment which the employer would not have otherwise created."

Furthermore, the evidence reflected that Luke could not perform an essential function of her job, i.e., lifting. The LEDL, designed to embody the protections of federal anti-discrimination laws, specifically prohibits discriminatory conduct in the workplace. Because of the substantial similarities between state and federal anti-discrimination laws, courts may appropriately consider interpretations of federal statutes when construing Louisiana law. *Hicks v. Central Louisiana Elec. Co., Inc.,* 1997-1232 (La. App. 1st Cir. 5/15/98), 712 So. 2d 656, 658. In discussing the American with Disabilities Act (ADA), 42 U.S.C. § 12101, courts have held that excusing an employee from an essential job function is not a required accommodation. *See Robertson v. Neuromedical Ctr.,* 161 F.3d 292, 295 (5th Cir. 1998), *cert. denied,* 526 U.S. 1098, 119 S.Ct. 1575 (1999) (ADA does not require an employer to relieve the employee of any essential functions of the job, modify the actual duties, or reassign existing employees or hire new employees to perform those duties); *Lang v. Wal-Mart Stores E., L.P.,* 813 F.3d 447, 455-56 (1st Cir. 2016) (employer does not have to discharge essential job function of lifting up to 60 pounds to accommodate employee); *Mulloy v. Acushnet Co.,* 460 F.3d 141, 153 (1st Cir. 2006) (employer does not have to redefine an employee's job description with a proposed accommodation); *Minnihan,* 779 F.3d at 813 (ADA did not apply to an employee who could not perform the essential job function of driving). "[T]he law does not require an employer to transfer from the disabled employee any of the essential functions of his job." *Barber v. Nabors Drilling U.S.A., Inc.,* 130 F.3d 702, 709 (5th Cir. 1997). If the plaintiff cannot perform the

essential functions of a job absent assigning those duties to someone else, then the plaintiff cannot be reasonably accommodated as a matter of law. *See Robertson*, 161 F.3d at 295; *see also Reigel v. Kaiser Foundation Health*, 859 F.Supp. 963, 973 (E.D.N.C. 1994) (holding that physician's request for re-assignment to part-time position, position with no call duty or position of supervision, all of which would have depleted the group's physicians by one and increased the administrative staff by one, was not a reasonable accommodation).

We do not find that La. R.S. 23:342(4) required defendants to make the accommodations that Luke seeks, as defendants were under no obligation to create a position for Luke or to discharge another employee. We find that Luke failed to produce factual support sufficient to establish that she would be able to satisfy her evidentiary burden of proof at trial, as the evidence did not establish that defendants had a light duty position to which Luke could be transferred for the entirety of her pregnancy. We therefore agree with the trial court's granting of summary judgment dismissing the claim.

## CONCLUSION

For the above and foregoing reasons, we affirm the trial court's July 24, 2019 judgment granting summary judgment in favor of CPlace Forest Park, SNF, LLC d/b/a Nottingham Rehabilitation Center and Traditions Senior Management, Inc., and dismissing all claims of Eryon Luke against them. All costs of this appeal are assessed to Eryon Luke.

**AFFIRMED.**