762 So.2d 1200 (2000)
Kevin P. BOUDREAUX
v.
LOUISIANA CASINO CRUISES, INC., d/b/a Casino Rouge and John Causey.
No. 99 CA 1168.
Court of Appeal of Louisiana, First Circuit.
June 23, 2000.
*1202 Breazeale, Sachse & Wilson by Murphy J. Foster, III, Jerry L. Stovall, Jr., Counsel for Defendant-Appellee, Louisiana Casino Cruises, d/b/a Casino Rouge.
Jane M. Triche, Counsel for Plaintiff-Appellant, Kevin P. Boudreaux.
Randall G. Wells, Counsel for Defendant-Appellee, John Causey.
Before NORRIS, CARAWAY and DREW, JJ. (Pro Tempore).
DREW, J. (Pro Tempore).
Plaintiff, Kevin Boudreaux, appeals a judgment granting defendant, Louisiana Casino Cruises, Inc. d/b/a Casino Rouge's ("Casino Rouge") motion for summary judgment. For the following reasons, we reverse in part and vacate in part the judgment of the trial court and remand this matter for further proceedings in accordance with this opinion.

FACTS
Kevin Boudreaux ("Boudreaux") was hired by Casino Rouge in January 1995 as a cage cashier. His immediate supervisor was the cage supervisor, Kallie Breaux ("Breaux"). Breaux's immediate supervisor was the cage shift manager, John Causey ("Causey"). Boudreaux alleged that Causey began to sexually harass him approximately three weeks after he began working for Casino Rouge and the harassment continued throughout the duration of his employment.
Boudreaux rode to and from work nearly every day with Breaux. He considered her a friend and began to confide in her about the sexual harassment he allegedly suffered at the hands of Causey. Initially, Boudreaux asked Breaux not to report the harassment to anyone else, and she complied with this request. Boudreaux continued to make reports to Breaux about the harassment approximately three to four times per week during the remainder of his employment with Casino Rouge.
At the time of Boudreaux's employment, Casino Rouge had a sexual harassment policy which stated:
Any supervisor or manager who becomes aware of possible sexual or other unlawful harassment should promptly advise the VP of Human Resources who will handle the matter in a timely and confidential manner.
This policy further provided the following steps that an employee should follow if he or she experienced sexual harassment in the workplace:
(1) After or during the first incident, the employee should convey to the offender that the behavior is unwelcome and offensive. If the employee feels that he/she can not tell the offender this, he/she should report the incident to his/ her supervisor, the VP of Human Resources, or a Human Resource Generalist.
(2) If a second incident occurs, report it immediately to the appropriate supervisor, the VP of Human Resources or a Human Resource Generalist.
(3) All claims will be investigated quickly and confidentially. The VP of Human Resources along with the appropriate supervisor(s) will question the complainant and the accused harasser. They will then scrutinize the information and determine the necessary action needed.
(4) If harassment has occurred, it will be stopped immediately by taking action against the harasser, and help will be given to the victim to overcome the harassment if needed.
(5) A meeting with the victim will be conducted in order to express the actions taken to stop the harassment and prevent it from occurring again.

*1203 (6) A follow-up procedure is done several months after the harassment complaint to ensure compliance with the policy.
Boudreaux admitted that he had seen both the employee handbook and the sexual harassment policy contained therein, although he testified that he was not given a copy of the handbook. He further admitted that he was told he could go to human resources at anytime and review the handbook, that he knew he needed to follow the guidelines in the handbook and that he knew if he experienced sexual harassment, he, or the supervisor or manager who learned of the sexual harassment, was to report same to human resources.
During the time period in question, Casino Rouge hired all employees subject to a initial probationary period of 90 days. At the end of the initial probationary period, the employees were evaluated and rated. An employee had to receive a score of 3.0 to satisfactorily complete the initial probationary period. However, at the completion of his initial probationary period, Boudreaux received a score of 2.2 on his evaluation. During this initial probationary period, Boudreaux apparently failed to show up for work on two occasions and was late on other occasions. He also experienced shortages in his cash drawer.
Boudreaux was informed of his insufficient evaluation by John Copriviza, the director of cage/credit, in a letter dated April 19, 1995. In this same letter, Copriviza gave Boudreaux an extension of 30 days to his initial probationary period.
However, at the end of that extension probation period, Copriviza sent Boudreaux another letter noting that Boudreaux had been absent four days during the 30-day period and had been issued a disciplinary notice due to cash variation. In this June 3, 1995 letter, Boudreaux was notified of his termination for failing to meet the standards during the extended probation period.
Boudreaux admitted that he did not report the harassment to anyone other than Breaux until three days before he was terminated. At that time, Boudreaux told Lori McPhail, another cage manager, about the harassment. McPhail testified that she learned of the sexual harassment from Boudreaux before he was terminated and reported it to human resources. Leslie Ledoux, a human resource generalist at the time of Boudreaux's complaint, investigated Boudreaux's allegations but was unable to find any supporting witnesses or evidence to substantiate his claims.
Following argument in this case on September 14, 1998, the trial court granted Casino Rouge's motion for summary judgment and gave the following as oral reasons for judgment:
The question is, can an employer be held liable where an employee is instructed on what to do, does not comply with the procedures with which he was instructed, tells a supervisor, and then tells a supervisor not to report it? Then should he be able to sue the employer after eliminating any possibility for the employer to reprimand or remove the supervisor-employee or do anything about it or investigate it?
In this case we even have surveillance films that show that on the dates the plaintiff alleges he was harassed, there's nothing on the surveillance films.
As a matter of law, without resolving any credibility, if an employee had been instructed, as in this case, on procedure to report sexual harassment, fails to do so, and actually prevents the conduct from being reported, then the employer should not be liable for the acts of an employee which is (sic) not employment related.
So I'll grant the motion for summary judgment, and we'll deny the no cause of action as unnecessary and render judgment in defendants' favor and against the plaintiff at plaintiff's cost.
Boudreaux's motion for new trial was denied.

*1204 DISCUSSION

In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Sanders v. Ashland Oil, Inc., 96-1751 (La.App. 1st Cir.06/20/97), 696 So.2d 1031, 1035, writ denied, 97-1911 (La.10/31/97), 703 So.2d 29. A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. Sanders, supra. Summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966 B. Summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966 A(2).
The burden of proof on a motion for summary judgment remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion is to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense. If the non-moving party then fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. Art. 966 C(2).

Casino Rouge
Boudreaux's claim against Casino Rouge is based on La. R.S. 23:1006, Louisiana's anti-discrimination law, which was repealed in 1997. However, at the time of these allegations, this statute prohibited employment discrimination on the basis of race, color, religion, sex, disability, or national origin. Louisiana's anti-discrimination law was similar in scope to the federal anti-discrimination prohibitions in Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e, et seq. Louisiana courts routinely look to the federal statute for guidance in determining whether a claim for sexual harassment has been asserted.
There are two types of sexual harassment, one based on a quid pro quo theory and the other based on a theory of a hostile working environment. Meritor Savings Bank v. Vinson, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). It is apparent from the record that Boudreaux's claim was based on a hostile working environment. To prevail in a sexual harassment action based on a hostile working environment, the employee must assert and prove: (1) That he belongs to a protected class; (2) that he was subject to unwelcome sexual harassment; (3) that the harassment was based on sex; (4) that the harassment affected a "term, condition or privilege of employment;" and (5) that the employer either knew or should have known of the harassment and failed to take prompt remedial action. DeAngelis v. El Paso Municipal Police Officers Association, 51 F.3d 591 (5th Cir.1995), cert. denied, 516 U.S. 974, 116 S.Ct. 473, 133 L.Ed.2d 403 (1995).
Apparently, the trial court did not take issue with the first four factors listed above. It is the final element that created the problem in this case, i.e., whether Casino Rouge knew or should have known of the harassment in question and failed to take prompt remedial action. The issue becomes even more confused when considered in light of the recent United States Supreme Court decisions in Faragher v. City of Boca Raton, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) and Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). In Faragher and Burlington, the Supreme Court recognized that in cases where the alleged harasser is a supervisor, *1205 the final element set forth in DeAngelis need not be proven. Rather, when no tangible employment action is taken, i.e., termination or a reduction in pay, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence. The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. Faragher, 118 S.Ct. at 2293; Burlington, 118 S.Ct. at 2270.
The trial court granted the instant motion for summary judgment, finding that if the employee actually prevented the employer from being informed of the conduct, the employer cannot be held liable. Based on our review of the record, we are not satisfied that the trial court was correct in its findings.
Initially, in order to determine whether Casino Rouge can raise the defense of Boudreaux's failure to report the harassment, this court must first address the issue of whether tangible employment action was taken by Causey against Boudreaux. The record is not clear on this point. While Copriviza signed the letters extending the probationary period and then terminating Boudreaux's employment, there appears to be a dispute about the extent of Causey's part in the decision to terminate Boudreaux's employment. This factual question should be answered through discovery and trial. However, it is also a factual question that must be answered in order to allow Casino Rouge to take advantage of the affirmative defense set forth in Ellerth and Faragher. Thus, for this reason alone, the grant of the summary judgment must be reversed.
Furthermore, it is clear that the trial court found Breaux to be Boudreaux's immediate supervisor. Thus, Boudreaux followed the steps outlined in the sexual harassment policy in that he reported the harassment to Breaux. While it is true that he asked her not to report the harassment initially, his deposition testimony attached to the motion indicates that Boudreaux told her not to tell anyone the first time he reported the harassment to her, but he did not repeat this directive on the remainder of the times that he told her about the harassment.
In addition to reporting the harassment to Breaux, Boudreaux reported the harassment to another supervisor, Lori McPhail, approximately three days before he was terminated by Casino Rouge. McPhail testified that she reported this harassment to the human resource department at Casino Rouge. Leslie Ledoux, a human resource generalist at the time of Boudreaux's complaints, confirmed that the harassment was reported and that she performed an investigation of Boudreaux's complaints.
Based on this additional report of the harassment by Boudreaux to McPhail, genuine issues of material fact exist concerning whether he complied with the casino's reporting policy. Additionally, as noted above, there also remain genuine issues of material fact concerning whether or not the casino should be allowed to raise a failure to report the harassment in accordance with their policy as a defense to Boudreaux's claims of sexual harassment. The judgment of the trial court granting the casino's motion for summary judgment is reversed, and this matter is remanded to the trial court for further proceedings in accordance with this opinion.

John Causey
Causey is represented by his own counsel and filed an exception of no cause of action in response to those claims made by Boudreaux. In its reasons for judgment, the trial court denied the no cause of action exception filed by Causey as unnecessary and dismissed Boudreaux's claims against Causey based on its grant *1206 of the casino's motion for summary judgment.
Causey is an individual defendant. He was not a party to the motion for summary judgment filed by the casino. Causey and the casino are separate defendants and the claims against Causey should be treated separately. The trial court's decision denying the exception of no cause of action is vacated and this matter is remanded to the trial court.

DECREE
For the foregoing reasons, the judgment of the trial court is reversed in part and vacated in part and this matter is remanded to the trial court for further proceedings in accordance with this opinion. Costs of this appeal are assessed against defendants/appellees, Louisiana Casino Cruises, Inc. d/b/a Casino Rouge and John Causey.
CARAWAY, J., concurs with written reasons.
CARAWAY, J., concurring.
While I concur with the rulings of the majority, from my review of the Faragher and Burlington Industries decisions by the United States Supreme Court, I find that there remains only one material fact issue concerning whether Breaux, acting for the employer, exercised reasonable care to correct promptly the reported sexual harassment. With Boudreaux's claim based upon a hostile working environment and not on the quid pro quo theory, there is no legal dispute nor fact issue concerning whether tangible employment action was taken against Boudreaux.