NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2020 CA 1013

TRACY A. LEVISEE

VERSUS

EXCEL SCAFFOLDING AND LEASING CORPORATION

*DATE OF JUDGMENT:*     APR 2 6 2021

ON APPEAL FROM THE TWENTY-THIRD JUDICIAL DISTRICT COURT
NUMBER 122182, DIVISION A, PARISH OF ASCENSION
STATE OF LOUISIANA

HONORABLE JASON VERDIGETS, JUDGE

* * * * * *

| | |
|---|---|
| Jill L. Craft<br>W. Brett Conrad, Jr.<br>Baton Rouge, Louisiana | Counsel for Plaintiff-Appellant<br>Tracy A. Levisee |
| Jennifer L. Simmons<br>Benjamin M. Pri-Tal<br>New Orleans, Louisiana | Counsel for Defendant-Appellee<br>Excel Scaffolding and Leasing<br>Corporation |

* * * * * *

BEFORE: WHIPPLE, C.J., WELCH, AND CHUTZ, JJ.

Disposition: REVERSED AND REMANDED.

Welch, J. Concurs in result without reasons

**CHUTZ J.**

In this suit for damages for sexual harassment and retaliation, plaintiff, Tracy A. Levisee, appeals a summary judgment dismissing her claims with prejudice. Finding that genuine issues of material fact exist, we reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff began working for Excel Scaffold and Leasing Corporation[1] (Excel) as a timekeeper in December 2015, working at Excel's location situated inside the Shell facility in Geismar, Louisiana. Plaintiff shared an office with her niece, Brittany Coco, who was the office manager at that location. Jeff Delatte was Excel's Geismar site manager.

Plaintiff claims Mr. Delatte sexually harassed her from February 2016 until she was constructively discharged in July 2017. In particular, she alleged Mr. Delatte frequently and explicitly discussed his sexual exploits, including with other female Excel employees; made sexually suggestive and/or repulsive comments to her and/or Ms. Coco in her presence; made comments about the bodies of plaintiff and other female employees, often in demeaning terms; showed her pictures of scantily-clad women; and played sexually explicit videos on his phone. As a result of the harassment, plaintiff indicated her ability to concentrate was affected, and she experienced depression, anxiety, and suicidal thoughts.

According to plaintiff, she complained directly to Mr. Delatte about his conduct and asked him to leave her alone and let her do her job. Additionally, she discussed and/or complained about Mr. Delatte's misconduct to Ms. Coco on numerous occasions, asking Ms. Coco to "do something" about it. Plaintiff claims Ms. Coco's response was to either tell plaintiff to "shake it off" or that Excel was

---

[1] At some places in the record, Excel is referred to as "Excel *Scaffolding* and Leasing Corporation" rather than "Excel *Scaffold* and Leasing Corporation." (Emphasis added.)

2

not going to let Mr. Delatte go and plaintiff would be out of there before he would be.

Plaintiff further claims Ms. Coco and Mr. Delatte retaliated against her at a July 31, 2017 meeting, during which they advised her of a change in her job duties. The change would have required plaintiff to split her time between doing scaffolding entries and timekeeping entries, whereas she previously had only done timekeeping entries. Plaintiff objected to doing scaffolding entries for several reasons, including her lack of experience and knowledge in that area. Plaintiff was told she had no choice "or else," which she understood to mean she would be terminated. At that point, feeling she had no choice but to quit, plaintiff did so. She alleged the change in her work duties was retaliatory and precipitated her constructive discharge.

Several days later, on August 3, 2017, plaintiff sent a letter to Excel outlining her complaints about Mr. Delatte in detail. Excel responded promptly, indicating it would investigate her complaint. Pending the investigation, Mr. Delatte was suspended, without pay, on August 14, 2017. Mark Sammis, Excel's human resources director, was the lead investigator.

On August 17, 2017, Excel extended a written offer including two options to plaintiff. The first option was for her to return to her former position at the Geismar location with Ms. Coco and, apparently, Mr. Delatte remaining as her supervisor. The second option was for plaintiff to take a position with Excel at its Reserve, Louisiana location, which would have required her to make a lengthy commute of an hour and a half. Plaintiff declined the offer.

Based on his interviews with several Excel employees at the Geismar location, Mr. Sammis concluded plaintiff's allegations could not be substantiated and, therefore, lacked merit. Nevertheless, Excel ordered Mr. Delatte to attend a day of EEOC training, which he completed on August 23, 2017. Afterward, Mr. Delatte

3

was counseled on "professionalism" (not sexual harassment) and the importance of setting a good example. He was further advised to end any personal relationship he had with any female subordinate. No other disciplinary or remedial action was taken against Mr. Delatte *as a result of plaintiff's complaint*, and Mr. Delatte was allowed to return to work. Shortly thereafter, Excel terminated Mr. Delatte's employment sometimes in September 2017, due to his personal relationship with a female subordinate. Thus, Mr. Delatte's termination was not a remedial action taken as a result of plaintiff's complaint.

On May 29, 2018, plaintiff filed suit against Excel for damages due to sexual harassment under Title VII of the Civil Rights Act of 1964 and La. R.S. 23:301, *et seq.*, the Louisiana Employment Discrimination Law (LEDL), and for retaliation. Excel answered the suit with a general denial without raising any affirmative defenses.

Subsequently, Excel filed a motion for summary judgment on the grounds that plaintiff would be unable to bear her burden of proof because Excel could not be held vicariously liable under La. C.C. art. 2320 for the actions of a rogue supervisor whose actions were not in furtherance of Excel's business or part of his employment duties. Excel further argued that even if the alleged misconduct occurred, which Excel denied, the misconduct was not severe enough to rise to the level of harassment. Finally, Excel argued plaintiff could not prevail due to the affirmative defense known as the ***Ellerth/Faragher*** defense.[2] When applicable, this defense precludes an employer from being held vicariously liable for sexual harassment committed by an employee, even when the plaintiff has established the elements of sexual harassment.

---

[2] The defense is based on the opinions of the United States Supreme Court in ***Burlington Industries., Inc. v. Ellerth***, 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) and ***Faragher v. City of Boca Raton***, 524 U.S. 775, 808, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).

4

Following a hearing on Excel's motion for summary judgment, the district court took the matter under advisement. On July 24, 2020, the district court signed a judgment granting Excel's motion for summary judgment and dismissing plaintiff's claims with prejudice. In its written reasons for judgment, the district court rejected plaintiff's contention that Excel waived the *Ellerth/Faragher* defense by failing to plead the defense in its answer. Moreover, while the district court found the alleged misconduct to be "abhorrent," it concluded plaintiff could not establish vicarious liability against Excel under La. C.C. art. 2320 because Mr. Delatte's alleged misconduct was not in furtherance of Excel's business or incidental to the performance of his employment duties. Additionally, it is plain that the district court also concluded the elements of the *Ellerth/Faragher* defense were established, stating that Excel had no notice of the alleged harassment prior to plaintiff's complaint in August 2017, Excel had a strict anti-harassment policy in place, and immediately upon receiving plaintiff's complaint, Excel began an investigation and took remedial measures.

Plaintiff has now appealed, arguing in five assignments of error that the district court erred in finding no genuine issues of material fact existed regarding her sexual harassment and retaliation claims, in permitting Excel to assert the *Ellerth/Faragher* defense, and in finding the *Ellerth/Faragher* defense precluded liability from being imposed on Excel in this case.

## SUMMARY JUDGMENT

A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. A summary judgment is reviewed on appeal *de novo*, with the appellate court using the same criteria that govern the district court's determination of whether summary judgment is appropriate, i.e., whether there is any genuine issue

of material fact, and whether the movant is entitled to judgment as a matter of law. ***Beer Industry League of Louisiana v. City of New Orleans***, 18-0280 (La. 6/27/18), 251 So.3d 380, 385-86.

The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require that it negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. La. C.C.P. art. 966(D)(1). The burden is then on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. ***Id.*** All factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the favor of the party opposing the motion. ***Willis v. Medders***, 00-2507 (La. 12/8/00), 775 So.2d 1049, 1050 (*per curiam*).

## DISCUSSION

### *Affirmative Defense*

Citing La. C.C.P. art. 1005, plaintiff argues Excel's failure to pled the ***Ellerth/Faragher*** affirmative defense in its answer barred Excel from raising the defense as a basis for its motion for summary judgment.

An affirmative defense raises a new matter that constitutes a defense to the action and will have the effect of defeating the plaintiff's demand on its merits, even assuming the allegations in the plaintiff's petition are true. The purpose of the La. C.C.P. art. 1005 requirement that affirmative defenses be affirmatively pled is to give the plaintiff fair and adequate notice of the nature of the defense. Therefore, a

6

defendant is not required to raise an issue as an affirmative defense if it does not raise a "new matter." *Succession of Ciervo v. Robinson*, 19-0140 (La. App. 1st Cir. 12/12/19), 291 So.3d 1063, 1075.

To establish the *Ellerth/Faragher* affirmative defense, an employer must show: (1) it exercised reasonable care to prevent and correct promptly any sexually harassing conduct; and (2) the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm. See *Boudreaux v. Louisiana Casino Cruises, Inc.*, 99-1168 (La. App. 1st Cir. 6/23/00), 762 So.2d 1200, 1204-05, writ denied, 00-2229 (La. 10/27/00), 772 So.2d 651; *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 478 n.3 (5th Cir. 2008). Upon review of plaintiff's petition, we conclude the *Ellerth/Faragher* defense raised no new matters not already raised by plaintiff's own allegations. In her petition, plaintiff alleged Excel did not have an effective policy on sexual harassment and retaliation and "failed to take any action to remedy the situation in [plaintiff's] work environment, to prevent [Mr. Delatte's] harassment and retaliation of her, to train [its] employees on how to handle, report, and address unlawful discrimination/harassment and retaliation/reprisal in the workplace." In making these allegations, plaintiff put at issue whether Excel exercised reasonable care to prevent and correct any sexually harassing conduct, which is the exact issue raised by the first element of the *Ellerth/Faragher* defense.

In alleging that she complained about Mr. Delatte's conduct both to him and to Ms. Coco on numerous occasions and that Excel failed to train its employees on how to report sexual harassment, plaintiff also put the second element of the *Ellerth/Faragher* defense at issue. These allegations go to the issue of whether plaintiff complied with Excel's complaint procedure set forth in Excel's sexual harassment policy, which is an issue central to the second element of the

7

*Ellerth/Faragher* defense. Normally, an employee's unreasonable failure to use a complaint procedure provided by the employer suffices to satisfy this element. See *Faragher*, 524 U.S. at 807-08, 118 S.Ct. at 2293.

Accordingly, because the *Ellerth/Faragher* defense raised no new matters that unfairly surprised plaintiff, Excel was entitled to raise this affirmative defense despite its failure to affirmatively plead the defense in its answer. See *Sher v. Lafayette Insurance Company*, 07-2441 (La. 4/8/08), 988 So.2d 186, 204.

*Sexual Harassment*:

In its motion for summary judgment, Excel asserted that even assuming the alleged misconduct by Mr. Delatte occurred, the misconduct failed to rise to the level of actionable sexual harassment.

Sexual discrimination and harassment in employment is prohibited by both federal and state law.[3] See 42 U.S.C. § 2000e, *et seq.* (Title VII); La. R.S. 23:301 *et seq.*; and La. R.S. 23:332; *Whittington v. Kelly*, 40,386 (La. App. 2d Cir. 12/14/05), 917 So.2d 688, 692. To prevail in a sexual harassment claim based on a hostile work environment when the alleged harasser is the plaintiff's supervisor, the plaintiff must prove: (1) she belongs to a protected class; (2) she was subject to unwelcome sexual harassment; (3) the harassment was based on sex; and (4) the harassment affected a term, condition or privilege of employment.[4] See *Boudreaux*, 762 So.2d at 1204-05. Although reprehensible, not every act of harassment necessarily gives rise to a hostile work environment claim. To be actionable, the harassment must be

---

[3] Because Louisiana's anti-discrimination law is similar in scope to federal Title VII, Louisiana courts routinely look to federal jurisprudence in interpreting Louisiana discrimination laws. *Assamad v. Percy Square & Diamond Foods, L.L.C.*, 07-1229 (La. App. 1st Cir. 7/29/08), 993 So.2d 644, 648, writ denied, 08-2138 (La. 11/10/08), 996 So.2d 1077.

[4] In cases where the alleged harasser is not the plaintiff's supervisor, the plaintiff must prove as an additional element that the employer knew or should have known of the harassment. *Boudreaux*, 762 So.2d at 1204-05.

sufficiently severe or pervasive as to alter the conditions of the victim's employment and create an abusive, hostile environment. *Assamad*, 993 So.2d at 648.

An enquiry into whether sexual harassment is severe and pervasive enough to constitute an actionable hostile work environment claim is by its nature fact-intensive. A court must consider all the circumstances, including the frequency of the conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. *Assamad*, 993 So.2d at 648.

In her deposition, plaintiff testified in graphic detail regarding Mr. Delatte's frequent misconduct, including the sexual nature of comments he made in her presence, questions and comments about her body, demeaning references to the bodies of other female employees, and sexually inappropriate photos and/or videos he showed to her. She further testified that the harassment affected her ability to perform her duties. Based on plaintiff's testimony, we believe reasonable persons could conclude the alleged misconduct was of sufficient severity and pervasiveness to constitute actionable sexual harassment. However, because it is possible that reasonable persons also could reach the opposite conclusion, a genuine issue of material fact exists as to this issue. See *Walker v. City of Indepedence Police Department*, 18-1739 (La. App. 1st Cir. 2/7/20), 296 So.3d 25, 30 (a genuine issue is one on which reasonable persons could disagree).

*Ellerth/Faragher Defense*:

Plaintiff argues there are several genuine issues of material fact in this case that precluded summary judgment on the basis of the *Ellerth/Faragher* affirmative defense. As previously noted, the elements of this defense are that (1) the employer exercised reasonable care to prevent and correct promptly any sexually harassing conduct, and (2) the plaintiff employee unreasonably failed to take advantage of any

9

preventative or corrective opportunities provided by the employer or to avoid harm. See *Boudreaux*, 762 So.2d at 1205.

The district court evidently concluded the evidence presented was sufficient to establish Excel's entitlement to the *Ellerth/Faragher* defense. In rendering summary judgment in favor of Excel, the district court noted that "Excel had a strict harassment policy in place and Excel immediately undertook an investigation and remedial measures upon Plaintiff's reporting the harassment after she quit," all of which is relevant to the first element of the *Ellerth/Faragher* defense.

We disagree that the evidence was sufficient to establish the first element, because there are multiple issues of fact concerning whether Excel exercised reasonable care to prevent and promptly correct any sexually harassing behavior, including an issue concerning the adequacy of Excel's sexual harassment policy.[5] Specifically, Mr. Sammis testified that, if Ms. Coco received a sexual harassment complaint, she should have reported it to her immediate supervisor, Mr. Delatte. When asked what Mr. Delatte should do with that information, Mr. Sammis responded that "[i]f it warranted or if [Mr. Delatte] felt that it needed to be

---

[5] The Excel harassment policy provides, in pertinent part, for the following procedure for making a complaint:

> The Company has designated a Sexual Harassment team. [The names and phone numbers, physical addresses, and email addresses of the Sexual Harassment team members are then set forth.]
>
> \*\*\*
>
> If any individual believes he or she has been subjected sexual harassment, the individual should initiate a complaint by contacting a Sexual Harassment Officer as soon as possible. The individual should file the complaint promptly following any incident of alleged harassment. The individual should be aware that the longer the period of time between the event giving rise to the complaint and the filing, the more difficult it will be for the Sexual Harassment Officer to investigate what occurred. The individual will be requested to write out his or her complaint to document the charge.
>
> If any employee prefers to discuss a possible sexual harassment problem with his or her supervisor, the employee may always do so, but employees do have to go through the regular chain of supervision when reporting sexual harassment and may go directly to a Sexual Harassment Officer.

10

escalated[,] then escalate it to the next higher person." Thus, according to Mr. Sammis, Excel's policy did not require a supervisor who has received a report of possible sexual harassment to report the matter to a Sexual Harassment Officer for investigation. Rather it is left to the supervisor's discretion whether to "escalate" the matter, which means that, in some instances, it is possible no action may be taken to investigate a sexual harassment complaint made in compliance with Excel's policy.[6]

Further, a genuine issue of material fact also exists as to whether Excel can establish the second element of the *Ellerth/Faragher* defense, *i.e.*, that the plaintiff unreasonably failed to take advantage of preventative or corrective opportunities the employer provided. Excel contends plaintiff failed to comply with the procedure outlined in its sexual harassment policy for reporting alleged sexual harassment, since her written complaint was not filed until after she had already left Excel's employment. However, Excel's harassment policy specifically gives an employee the option, if she prefers, "to discuss a possible sexual harassment problem with his or her supervisor" rather than contacting a Sexual Harassment Officer. Plaintiff testified she repeatedly complained to or "discussed" Mr. Delatte's inappropriate conduct with Ms. Coco and asked her to do sometime about it. Moreover, Ms. Coco

---

[6] There are also other genuine issues of facts pertinent to whether Excel exercised reasonable care to prevent and promptly correct any sexually harassing behavior. For instance, although Excel's sexual harassment policy is included in the employee handbook, there was no evidence of any sexual harassment training provided to non-supervisor employees as to what constitutes sexual harassment or how to report it. Mr. Sammis testified he "currently" goes around the country to each job site giving sexual harassment training, but did not state he did so at the time plaintiff was employed by Excel. Mr. Sammis previously provided sexual harassment training at the annual conferences attended by site managers, including Mr. Delatte, when he would "go into a section of talking about harassment." In contrast, Mr. Delatte testified in his deposition that he received no training concerning Excel's sexual harassment policy. Further, another genuine issue of fact exists regarding the adequacy of the remedial measures Excel took to prevent sexually harassing behavior in light of Mr. Delatte's testimony that, prior to his deposition, he knew plaintiff had filed a complaint against him, but was unaware it was a sexual harassment complaint.

was the office manager and indicated in her deposition that she was plaintiff's supervisor.

In his testimony, Mr. Sammis maintained that plaintiff merely had conversations with Ms. Coco, who was a family member, about Mr. Delatte's misconduct, without making a complaint as provided in its sexual harassment policy. Even though there is nothing in the Excel policy requiring an employee to make multiple reports of alleged sexual harassment, Mr. Sammis further asserted that, if plaintiff was not satisfied with Ms. Coco's response, she should have contacted a Sexual Harassment Officer.

Considering these circumstances, we find a genuine of material fact existed as to whether plaintiff's conversations and/or complaints to Ms. Coco complied with Excel's policy for reporting sexual harassment. Excel, thus, failed to show it could meet the second element of the *Ellerth/Faragher* defense. Due to this issue, as well as the others issues of material fact previously noted, the district court erred in granting summary judgment dismissing plaintiff's sexual harassment claim.[7]

*Retaliation*:

In its motion for summary judgment, Excel asserted plaintiff could not prove she suffered an adverse employment action, which is an essential element of a

---

[7] There is no merit in Excel's contention that it cannot be held liable for Mr. Delatte's actions under La. C.C.P. art. 2320, since his misconduct was not in furtherance of Excel's business or part of his employment duties. Article 2320, which embodies the doctrine of *respondent superior* under which an employer may be held liable for a tort committed by an employee, is applicable to claims based on general tort law. Plaintiff's claims herein are based on Title VII and the LEDL, rather than on general tort law pursuant to La. C.C. art. 2315, *et seq.* In order to establish a sexual harassment claim under Title VII and the LEDL, a plaintiff is not required to prove that the harasser's actions were in furtherance of his employer's business or within his employment duties. See *Boudreaux*, 762 So.2d at 1204-05. Excel's reliance on *Tanner v. Reynolds Metals Company*, 98-1456 (La. App. 1st Cir. 6/25/99), 739 So.2d 893, is misplaced. In *Tanner*, this court found that Article 2320 was applicable to the plaintiff's sexual harassment claim made under general tort law. However, when analyzing the plaintiff's sexual harassment claim under the LEDL, the *Tanner* court made no reference to Article 2320. The rejection of the plaintiff's LEDL claim was based on the *Ellerth/Faragher* affirmative defense, rather than on the application of Article 2320.

12

retaliation claim.[8] Plaintiff argues the district court erred in dismissing her retaliation claim because the reassignment of her duties to performing scaffolding entries part time was an adverse employment action.[9]

In order to establish a claim for retaliation, the United States Supreme Court has stated, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse," meaning it might have dissuaded a reasonable employee from making or supporting a charge of discrimination. *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 2415, 165 L.Ed.2d 345 (2006). In *White*, the Supreme Court emphasized that the significance and impact of any alleged act of retaliation is dependent upon the surrounding circumstances, expectations, and relationships involved. *White*, 548 U.S. at 69, 126 S.Ct. at 2415. With respect to a reassignment of work duties in particular, the Supreme Court noted that determining whether the reassignment is materially adverse to an employee must be judged from the perspective of a reasonable person in the plaintiff's position. *White*, 548 U.S. at 71, 126 S.Ct. at 2417.

Regarding the reassignment of her duties in this case, plaintiff testified that she lacked sufficient experience and knowledge to do scaffolding entries, doing scaffolding entries provided fewer opportunities for her to earn overtime pay, and the prior three employees who did scaffolding entries were fired. Plaintiff's testimony suggested she believed that because she might be unable to successfully

---

[8] To establish a *prima facie* case of retaliation, the plaintiff must prove: (1) she engaged in an activity protected by Title VII; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse employment action. *Hanley v. Doctors Hospital of Shreveport*, 35,527 (La. App. 2d Cir. 6/6/02), 821 So.2d 508, 519; *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d at 484. Excel's motion for summary judgment raised no issue as to the first and third elements of plaintiff's retaliation claim.

[9] Although the district court did not mention plaintiff's retaliation claim in either the judgment or the written reasons for judgment, this claim was included in the district court's general dismissal of "Plaintiff's claims against [Excel]."

13

do scaffolding entries given her lack of knowledge and experience, the reassignment could lead to her being fired, particularly considering the number of prior employees who were fired while doing scaffolding entries. However, Ms. Coco testified that the reason for the reassignment was to take some of the stress off of plaintiff by assigning her duties that, unlike timekeeping entries, did not have daily deadlines.

Considering the conflicting evidence, we find a genuine issue of fact existed concerning whether the reassignment of plaintiff's duties constituted an adverse employment action. Accordingly, the district court erred in granting summary judgment dismissing plaintiff's retaliation claim.[10]

## CONCLUSION

For the above reasons, the judgment granting the motion for summary judgment filed by defendant, Excel Scaffold and Leasing Corporation, Inc., and dismissing the claims of plaintiff, Tracey A. Levisee, with prejudice, is hereby reversed. This matter is remanded to the district court for further proceedings consistent with this opinion. All costs of this appeal are assessed to defendant.

**REVERSED AND REMANDED.**

---

[10] Plaintiff further contends her alleged constructive discharge constituted another adverse employment action. We pretermit consideration of this issue, since this court has already concluded a genuine issue of material fact precluding summary judgment exists regarding plaintiff's retaliation claim.