jjCOOKS, Judge.
In this action, Joseph Murray filed suit and secured a default judgment against Bir-dell Griffin for personal injuries he allegedly sustained when he fell off a ladder on March 3, 1992. Murray contracted to complete certain repairs on Griffin’s residence. While performing the agreed construction work, Murray requested use of Mrs. Griffin’s ladder. Apparently, the only ladder Mrs. Griffin owned was wooden with eight steps measuring approximately eight feet in height. Griffin loaned the ladder to Murray. In his petition for damages Murray alleged the ladder was defective; and, it broke while he was performing his duties at Griffin’s home. He further alleged Griffin knew or should have *643 known of the ladder’s condition; and, her negligence in loaning him a defective ladder was the sole cause of the accident.
Murray’s petition was filed one day before the anniversary of the alleged accident. The record does not contain a sheriffs return or clerk certificate indicating when suit was served on Mrs. Griffin and whether the mandated service was executed personally or domiciliary. The petition is followed in the record by a form apparently signed by Murray’s attorney requesting that the clerk tender the matter for entry of a preliminary default. The minutes of the court reflect a preliminary default was entered on April 23, 1993. At the confirmation hearing conducted on June 4, 1993, Murray testified “while [he] was pulling some bolts aloose ... the ladder toned, and [he] fell backwards with the ladder.” We have gathered from the skimpy testimony contained in the record that Murray blames his fall entirely on what Rhe described as the “rickety” condition of the ladder. As depicted in the photographs introduced at the confirmation hearing, the ladder appears sturdy though showing signs of use and exposure to the environment. Murray presented the testimony of two coworkers who were at the scene when the accident occurred. Melvin Prevot stated he heard a crash, turned around, and noticed Murray laying on his back. When Prevot was questioned whether the ladder was “rickety,” he responded, yes; and, he stated it [shook] a lot. He did not see Murray actually fall. James Barker stated he was about “12 to 17” feet from Murray, nailing on a board, when he heard a noise and saw Murray falling. In his words, the ladder was “in bad shape.” None of the witnesses, including Murray, testified the ladder “broke” at the time of the accident or Mrs. Griffin knew or should have known the ladder was “defective” and would not support Murray’s weight. Instead, all the witnesses acknowledged (including Murray) when they inspected and lifted the ladder it was either “real rickety” or “in bad shape.”
The documentary evidence offered by Murray to establish his damage claim consisted solely of medical bills from Dr. Kaplan, St. Francis Cabrini, and Wal-mart Pharmacy. None of these bills mentioned the nature of Murray’s condition or otherwise described the treatment rendered. No narrative medical reports or physicians’ statements of any kind were presented by Murray to verify the nature of his claimed injuries or to connect his extended thirty day hospital stay with the alleged fall. Even Murray’s testimony does not enlighten us on the exact injuries he sustained; nor does Murray explain why he allegedly underwent “four operations.” His testimony is extremely disjointed; and, vacillated between describing “problems with his back” to “swelling” and strangely mentioning “it was going into gangrene.” The “it” is not identified and the record closed -without any greater clarification. Murray’s piecemeal account of his injuries appears deliberately elusive. His failure to introduce itemized medical bills or a certified copy of the hospital record substantially weakens the weight of the evidence he offered to support his damage claim.
Louisiana Civil Procedure Article 1702 provides “A judgment of default must be confirmed by proof of the demand sufficient to establish a prima facie case.” Plaintiff has the burden of establishing a prima facie case by proving with competent evidence the essential elements of his claim as fully as if each of the allegations of the petition had been specifically denied. Halliday v. Water Works of Louisiana, Inc., 425 So.2d 949 (La.App. 5th Cir.1983); Jones v. Ledet, 383 So.2d 1308 (La.App. 3rd Cir.1980); Dozier v. Burleigh, 380 So.2d 197 (La.App. 3d Cir.1980). The evidence must be such that plaintiff probably would prevail after full trial on lathe merits. Meshell v. Russell, 589 So.2d 86 (La.App. 2d Cir.1991). To obtain reversal of a default judgment, defendant must overcome the presumption that the judgment was rendered upon sufficient evidence and that it is legally correct. However, this presumption does not apply where the record contains a note of evidence introduced or a transcript of the proceedings in the trial court. Perkins v. Fontenot, 548 So.2d 369 (La.App. 3d Cir.1989); Philip White, Etc. v. Baricev/Waguespack, 410 So.2d 1247 (La.App. 3d Cir.1982).
*644 Thus, we must examine the transcript and other documents in the record to determine whether Murray presented prima facie evidence to establish both his liability and damage claims unaided by any presumption. Under either a negligence (LSA-C.C. Article 2315) or a strict liability (LSA-C.C. Article 2317) theory of recovery against the owner or custodian of a thing plaintiff must prove (1) the thing was in defendant’s custody; (2) the thing had a vice or defect; (3) the vice or defect presented an unreasonable risk of harm to others; and (4) the injury or damage sustained by plaintiff was caused by the vice or defect. Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106 (La.1990); Loescher v. Parr, 324 So.2d 441 (La.1975). The difference between the two theories of liability is proof as to the defendant’s knowledge. To prove negligence, plaintiff must show defendant knew or should have known of the unreasonable risk of harm posed by the thing. Defendant’s knowledge is not required to prove strict liability.
The evidence sufficiently establishes the ladder belonged to Mrs. Griffin who allowed Murray to use it on his request. Murray contends the ladder was defective because it was “rickety.” As we have surmised from his testimony and that of his eo-work-ers, this condition allegedly made the ladder unstable in use. Though the record is incomplete, we gather from the testimony that Murray is not a newcomer to the construction industry; and, presumably he has mounted many ladders in the course of his trade. The “rickety” condition of the ladder was apparent to both witnesses immediately following Murray’s fall. Murray did not testify that he noticed any bolts, nuts, or braces missing from the ladder prior to or after his fall. More importantly, he did not testify the ladder was damaged as a result of the fall. The condition of the ladder, thus, remained the same; and, the evidence shows when Murray decided to use and later mount the ladder it was “rickety then” and “rickety after” the accident. The defect which Murray alleges was readily apparent. Certainly an experienced construction worker, such as Murray, should not have used the ladder without taking any precaution to guard against the fall. He did not attempt to support the ladder or otherwise position it to Uminimize turning or tilting. Despite the ladder’s obvious condition, Murray decided to use it nevertheless. At the time of the fall, he was pulling “some bolts aloose” without taking any precautions to balance himself on the alleged “rickety” ladder which he claims turned and caused his fall. We recognize Mrs. Griffin owed a duty to keep her ladder free from defects which posed an unreasonable risk of injury to a gratuitous user. Her responsibility, however, does not obviate Mr. Murray’s corresponding duty to exercise reasonable care for his own safety and to avoid obvious dangers posed by the defective ladder. Shaw v. Fidelity & Cas. Ins., 582 So.2d 919 (La.App. 2d Cir.1991). The condition which Mr. Murray complained constituted a defect which should have been even more apparent to an experienced construction worker than to Mrs. Griffin.
Furthermore, Murray did not offer any testimony to show what was “wrong” with the ladder in design or construction; and none of the witnesses testified they noticed the ladder was broken, as originally alleged in the petition, or an attachment was missing from it. The “pulling” maneuver which Murray admittedly was engaged in immediately prior to the accident could have caused even a new ladder to turn and tilt backward from the unbalanced weight of his body.
We also find the proof offered by Murray to establish his damage claim totally insufficient. LSA-C.C.P. Article 1702(D) requires ‘When the demand is based upon a claim for a personal injury, a sworn narrative report of the treating physician or dentist may be offered in lieu of his testimony.” Murray did not introduce any medical reports, sworn or otherwise; and, he did not introduce a certified or uncertified copy of the hospital records. Meshell, supra. His uncorroborated testimony regarding a back injury, swelling, and gangrene without more is deficient to prove the nature and extent of the injuries directly attributable to the fall and to connect the claimed medical expenses with the accident. Murray testified the accident occurred on a Friday and on the following Sunday he visited the emergency room of *645 a local hospital because of pain he was experiencing. He then “stayed in the hospital for thirty days.” Reviewing the medical bills in evidence, we noticed Murray’s first visit to the emergency room occurred on March 22, 1992, nineteen days after the accident. None of the bills evidence any services rendered to Murray on the day of the accident or on the Sunday which followed it.
For the foregoing reasons, the default judgment of the trial court is reversed and the case is remanded for further proceedings. All costs are assessed against Appel-lee, Joseph Murray.
REVERSED AND REMANDED.