993 So.2d 644 (2008)
Sheila ASSAMAD
v.
PERCY SQUARE AND DIAMOND FOODS, L.L.C.
No. 2007 CA 1229.
Court of Appeal of Louisiana, First Circuit.
July 29, 2008.
*645 Chad F. Reynolds, Baton Rouge, LA, for Plaintiff-Appellee, Sheila Assamad.
Daniel J. Balhoff, Perry, Atkinson, Balhoff, Mengis & Bums, L.L.C., Baton Rouge, LA, for Defendant-Appellant, Diamond Foods, L.L.C.
Before PARRO, KUHN, and DOWNING, JJ.
PARRO, J.
Diamond Foods, L.L.C. (Diamond) appeals a confirmation of default judgment taken against it by Sheila Assamad (Assamad) in a suit for sexual harassment in the workplace. For the reasons that follow, we vacate the trial court's judgment and *646 remand the matter for further proceedings.

Factual and Procedural Background
On July 20, 2000, attorney Charles L. Dirks, III (Dirks) filed a suit for damages on behalf of Assamad against Percy Square (Square) and Diamond based on allegations of sexual harassment. Diamond, a limited liability company domiciled and doing business in the parish of East Baton Rouge, owned a Wendy's restaurant at which Assamad and Square were employed. The petition was personally served on Diamond on July 25, 2000, through its agent for service of legal process, Frances M. Snyder at 450 Laurel Street, Suite 1000, Baton Rouge, Louisiana 70801.
On June 2, 2003, attorney Chad F. Reynolds (Reynolds) filed a motion to enroll as counsel of record for Assamad. The motion failed to indicate whether notice had been given to Diamond (the opposing party) or Dirks (Assamad's counsel of record). Based on the fact that Diamond failed to appear or file an answer, Reynolds moved for entry of a preliminary default on July 10, 2003, on Assamad's behalf, which was entered on July 15, 2003.
Subsequently, on August 18, 2006, based on the testimonial and documentary evidence offered, the default judgment was confirmed in favor of Assamad, ordering Diamond to pay $100,000 in general damages, $10,920 in past lost wages, $400 in medical expenses, $10,000 in attorney fees, together with legal interest from the date of judicial demand until paid, and costs. On December 11, 2006, Diamond filed a motion for new trial, asserting that the judgment was unjust and contrary to the law and the evidence, pointing particularly to an agreement between Donald L. Feinstein, who was Diamond's chairman of the board, and Dirks in which Dirks allegedly promised to give notice to Diamond before taking any adverse action against Diamond. Following a hearing, the trial court found that there were no peremptory grounds mandating the granting of a new trial, and it declined to exercise its discretion in ordering a new trial. Subsequently, Diamond appealed the August 18, 2006 confirmation of default judgment, contending that the trial court erred in the following respects:
1. granting the motion by Reynolds to enroll as counsel,
2. confirming the default judgment,
3. finding Diamond liable,
4. failing to apportion fault between Diamond and Square in light of the legislature's abolishment of solidary liability as to joint tortfeasors,
5. awarding medical expenses,
6. awarding excessive general damages, and
7. denying its motion for new trial based on the nullity of the confirmation of default judgment

Sufficiency of the Evidence
A judgment of default must be confirmed by proof of the demand sufficient to establish a prima facie case. LSA-C.C.P. art. 1702. The plaintiff has the burden of establishing a prima facie case by proving with competent evidence the essential elements of his claim as fully as if each of the allegations of the petition had been specifically denied. Sessions & Fishman v. Liquid Air Corp., 616 So.2d 1254, 1258 (La.1993). The evidence must be such that the plaintiff probably would prevail after full trial on the merits. Thibodeaux v. Burton, 538 So.2d 1001, 1004 (La.1989); Crescent City Const., Inc. v. Camper, 03-1727 (La.App. 1st Cir.12/30/04), 898 So.2d 408, 413. To obtain reversal of a confirmation of default judgment, the defendant must overcome *647 the presumption that the judgment was rendered upon sufficient evidence and that it is legally correct. However, this presumption does not apply where the record contains a note of evidence introduced or a transcript of the proceedings in the trial court. Grevemberg v. G.P.A. Strategic Forecasting Group, Inc., 06-0766 (La.App. 1st Cir.2/9/07), 959 So.2d 914, 917-18.
When a demand is based on a delictual obligation, the testimony of the plaintiff, together with corroborating evidence, which may be by affidavits and exhibits annexed thereto which contain facts sufficient to establish a prima facie case, shall be admissible, self-authenticating, and sufficient proof of such demand. The court may, under the circumstances of the case, require additional evidence in the form of oral testimony before entering judgment. LSA-C.C.P. art. 1702(B)(2). When the demand is based on a claim for a personal injury, a sworn narrative report of the treating physician or dentist may be offered in lieu of his testimony. LSA-C.C.P. art. 1702(D). Thus, we must examine the transcript and other documents in the record to determine whether Assamad presented sufficient competent evidence to establish a prima facie case as to the elements of liability and damage, unaided by any presumption in this case. See Murray v. Griffin, 94-0036 (La.App. 3rd Cir.6/1/94), 640 So.2d 641, 644; see also LSA-C.C.P. art. 1702; Sessions & Fishman, 616 So.2d at 1258.
In her petition, Assamad alleged that in May 1999, Square, her co-worker, repeatedly touched and grabbed her buttocks and breast in a sexual manner without her consent. Assamad asserted that Square also made sexually suggestive comments to her regarding his penis size and sexual acts he would like to perform with her. She urged that, as a result of this sexual harassment to which she objected, she suffered physical and emotional pain and suffering, anxiety, personal embarrassment, humiliation, and ridicule. According to her petition, Assamad's supervisor, Cassandra Jones, knew or should have known that Assamad was being sexually harassed by Square as a result of a report made to her by Assamad on July 19, 1999. Subsequently, Square's sexually harassing behavior continued, and he was not disciplined by Diamond's supervisory personnel. These actions and inactions allegedly forced her to resign from her employment on August 15, 1999. Based on these allegations of fact, Assamad urged that she was subjected to a hostile work environment for which she has a claim under LSA-R.S. 23:301 et seq., in particular section 332. She further asserted that Diamond was vicariously liable for Square's actions and for the negligent hiring and retention of Square.
Concerning intentional discrimination in employment, LSA-R.S. 23:332(A) of the Louisiana Employment Discrimination Law (LEDL) provides:
It shall be unlawful discrimination in employment for an employer to engage in any of the following practices:
(1) Intentionally fail or refuse to hire or to discharge any individual, or otherwise to intentionally discriminate against any individual with respect to his compensation, or his terms, conditions, or privileges of employment, because of the individual's race, color, religion, sex, or national origin.
(2) Intentionally limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities, or otherwise adversely affect his status as an employee, because of the individual's race, color, religion, sex, or national origin.
*648 Because this statute is similar in scope to the federal anti-discrimination prohibitions in Title VII of the Civil Rights Act of 1964,[1] Louisiana courts have routinely looked to the federal jurisprudence for guidance in determining whether a hostile work-environment claim based on sexual harassment has been asserted under LSA-R.S. 23:332(A). See Chaney v. Home Depot, USA, Inc., 05-1484 (La.App. 4th Cir.8/16/06), 940 So.2d 18, 21-22, writ denied, 06-2286 (La.11/22/06), 942 So.2d 559; see also St. Romain v. State, Through the Dept. of Wildlife and Fisheries, 03-0291 (La.App. 1st Cir.11/12/03), 863 So.2d 577, 587, writ denied, 04-0096 (La.3/26/04), 871 So.2d 348; Hicks v. Central Louisiana Elec. Co., Inc., 97-1232 (La.App. 1st Cir.5/15/98), 712 So.2d 656, 658.
In order to prevail in a hostile work-environment claim, plaintiffs must assert and prove: 1) they belong to a protected group; 2) they were subjected to unwelcome harassment; 3) the harassment was motivated by discriminatory animus (sex); 4) the harassment affected a term, condition, or privilege of employment; and 5) the employer knew or should have known of the harassment and failed to take proper remedial action. Hicks, 712 So.2d at 658-59. In determining whether an actionable hostile work-environment claim exists, a court must consider all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. Alcorn v. City of Baton Rouge, 02-0952 (La.App. 1st Cir.12/30/04), 898 So.2d 385, 389, writ denied, 05-0255 (La.4/8/05), 899 So.2d 12.
The type of conduct constituting sexual harassment includes unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature. Such misconduct constitutes sexual harassment regardless of whether it is directly linked to the grant or denial of an economic quid pro quo, if the purpose or effect of the misconduct is to unreasonably interfere with an individual's work performances or to create an intimidating, hostile, or offensive work environment. Every act of harassment, although reprehensible, does not necessarily give rise to a hostile work-environment claim. To be actionable, the harassment must be sufficiently severe or pervasive as to alter the conditions of the victim's employment and create an abusive, hostile environment. Brown v. Vaughn, 589 So.2d 63, 65 (La. App. 1st Cir.1991). In general, hostile work-environment harassment is characterized by multiple and varied incidents of offensive conduct which have the cumulative effect of creating a hostile working environment for the employee thus victimized. Brown, 589 So.2d at 65.
At the hearing on the confirmation of default judgment, the testimony of Assamad and a co-worker, Sandra K. Brown, was offered. A copy of Assamad's medical *649 records from Urgent Care & Family Medicine was certified by Southern Medical Document Solutions, L.L.C., and this certified copy was introduced at the hearing.
Assamad testified that she worked as an opener at Wendy's. Generally, she would report to work early to assist with stock. The manager, Cassandra Jones, who had worked with Square at another fast food establishment, hired Square as a cook for Wendy's in 1999. Almost daily, Square made sexual advances toward Assamad seeking to get her to be with him. These advances consisted of comments about the size of his penis and sex, as well as improper touching of her buttocks and breasts when they were alone in an area at work. Square's actions were regularly witnessed by Ms. Brown, who testified that she believed that Square's recurring action toward Assamad was inappropriate and upsetting to Assamad. Ms. Brown also explained that Square made general comments of a sexual nature that would have been heard by Ms. Jones, when she was in the area.
Assamad explained that she told Square that she was not interested in having a relationship with him and that she objected to his behavior. On the advice of a coworker, Assamad reported Square's conduct to Ms. Jones, who informed Assamad that she would speak with Square. Assamad testified that during her conversation with Ms. Jones, Ms. Jones indicated that she and Square had previously worked together for another fast food establishment at which she caught Square with a girl in the basement. According to Assamad, Ms. Jones informed her that she hired Square to work for Wendy's based on her belief that Square would not continue that type of behavior.
Assamad explained that Square was not disciplined and his harassing behavior continued. Additionally, Assamad stated that Ms. Jones and Square began to act funny towards her. Square was upset about having been reported. Assamad and Square would bicker with one another at work. Ms. Jones changed Assamad's work time slightly and told her that she no longer needed her to work extra hours in the morning.
Assamad testified that by August 1999,[2] she no longer wanted to continue working at Wendy's because of the way she was being treated by Ms. Jones and Square, so she resigned. Assamad explained that because of this experience, she is nervous all of the time and worried about being touched inappropriately when approached by a man. According to Assamad, she experienced blood pressure and anxiety problems for which she sought medical treatment from Dr. Saiyid R. Wahid. Dr. Wahid reportedly prescribed medication for both of these conditions. Although Assamad interviewed for other jobs, she did not return to work until one year later, when she took a job at a different restaurant.
Based on this evidence, Assamad contends that she proved a prima facie case for a hostile work-environment claim under the LEDL or Title VII.[3] Assuming for the sake of argument that Assamad presented sufficient proof to satisfy *650 the five elements of a hostile work-environment claim listed above, we are not convinced that Assamad has proven an essential element of her claim, i.e., the causal relationship between the harassment and her alleged damages, with competent evidence, as though each allegation had been denied.[4]
In support of her testimony that she experienced blood pressure and anxiety problems as a result of Square's sexual harassment, Assamad offered a certified copy of the medical records pertaining to the treatment given to her by Dr. Wahid. Certified medical records are admissible in establishing a prima facie case for delictual personal injury in a confirmation of default. See Oliver v. Cal Dive International, Inc., 02-1122 (La.App. 1st Cir.4/2/03), 844 So.2d 942, 945, writs denied, 03-1230 and 03-1796 (La.9/13/03), 853 So.2d 638 and 648. According to the medical records, Dr. Wahid has treated Assamad for urinary tract infections, heart palpitations, coughing, sore throat, congestion, bronchitis, menopause, high blood pressure, and anxiety. The earliest treatment reflected in these records was on March 31, 2003, some three years and seven months after her resignation from Wendy's. In light of the evidence presented, we conclude that the proof offered by Assamad was insufficient to establish a prima facie case that the blood pressure and anxiety problems for which Dr. Wahid treated her from March 2003 to January 2005 were causally related to the 1999 incidents of sexual harassment. Her uncorroborated testimony regarding these injuries is insufficient to prove the existence, nature, and extent of the injuries directly attributable to the sexual harassment and to connect the claimed medical expenses with the harassment. See Hanley v. Doctors Hosp. of Shreveport, 35,527 (La.App. 2nd Cir.6/6/02), 821 So.2d 508, 524. Therefore, live physician testimony or a sworn narrative report in lieu thereof was necessary in this case. See LSA-C.C.P. art. 1702(D); Oliver, 844 So.2d at 945.
Furthermore, we note that we are unable to find that Assamad proved that her post-resignation economic damages were causally related to the sexual harassment. Although Assamad testified that she had a one-year gap in her employment following her resignation, she did not explain how or what portion of this period of unemployment was due to circumstances caused by Square's sexual harassment.

Decree
For the foregoing reasons, the confirmation of default judgment of the trial court is vacated, and the case is remanded for further proceedings.[5] Costs of this appeal are assessed against Sheila Assamad; assessment of all other costs is to await final disposition of the case.
VACATED AND REMANDED.
NOTES
[1] The federal law provides in relevant part:

It shall be an unlawful employment practice for an employer
(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.
42 U.S.C. § 2000e-2(a).
[2] Assamad worked for Wendy's for about 2 years.
[3] Alternatively, Assamad contends that she proved a prima facie case for quid pro quo sexual harassment. Notably, "quid pro quo" harassment exists when an employer places unwanted terms or conditions on employment, benefits, or other employment advantages in exchange for sexual favors. St. Romain, 863 So.2d at 586. In a quid pro quo harassment action, the employee bears the burden of proof to support charges that submission to the unwelcomed sexual advances of supervisory personnel was an express or implied condition for receiving job benefits or that a tangible job detriment resulted from the employee's failure to submit to the sexual demands of the supervisory employees. Highlander v. K.F.C. Nat. Management Co., 805 F.2d 644, 648-49 (6th Cir.1986). The record reveals that Ms. Jones was Assamad's supervisor. Since there is no evidence that Ms. Jones made any sexual demands of Assamad or that Square was Assamad's supervisor, we conclude that Assamad has failed to present prima facie proof of quid pro quo sexual harassment.
[4] Similarly, Assamad failed to establish the requisite causal connection with respect to her negligence claims.
[5] In so ruling, we render no opinion as to the propriety of Diamond's assertion, in this appeal, of the nullity of the confirmation of default judgment on the ground of ill practice by Reynolds. We also pretermit discussion of the other issues raised in this appeal.