STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2021 CA 0796

JEFFREY GAUTREAU

VERSUS

ENLINK MIDSTREAM OPERATING GP, LLC;
ENLINK MIDSTREAM OPERATING, LP;
EDWIN CORMIER, JR.; GREGORY GIBSON

Judgment Rendered: MAY 2 5 2022

* * * * * * *

On Appeal from the 23rd Judicial District Court
In and for the Parish of Ascension
State of Louisiana
Trial Court No. 123,345
Honorable Katherine Tess Percy Stromberg, Judge Presiding

* * * * * * *

J. Arthur Smith, III
Robert Moseley Schmidt
Baton Rouge, Louisiana

Attorneys for Plaintiff/Appellant,
Jeffrey Gautreau

Monique Gougisha Doucette
Kristyn L. Lambert
New Orleans, Louisiana

Attorneys for Defendants/Appellees,
EnLink Midstream Operating GP,
LLC; EnLink Midstream Operating,
LP; Edwin Cormier, Jr.; Gregory
Gibson

* * * * * * *

BEFORE: WHIPPLE, CJ., PENZATO, AND HESTER, JJ.

**PENZATO, J.**

Plaintiff, Jeffrey Gautreau, appeals a summary judgment in favor of defendants, EnLink Midstream Operating GP, LLC, EnLink Midstream Operating, LP, Edwin Cormier, Jr., and Gregory Gibson, dismissing Mr. Gautreau's claims with prejudice. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

The following undisputed facts were established by the evidence submitted in connection with the motion for summary judgment.

Mr. Gautreau began working for defendant EnLink Midstream Operating GP, LLC ("EnLink"), then known as Crosstex, in 2005, when he was 43 years old. His supervisor at the time was plant manager Dean Carmouche. In 2011, Aaron Wimberly replaced Mr. Carmouche. That same year, Mr. Gautreau was promoted from the position of process operator to plant foreman. As plant foreman, Mr. Gautreau supervised the process operators with whom he previously worked side-by-side.

During his first few years as plant foreman, Mr. Gautreau received positive feedback regarding his performance. In Mr. Gautreau's 2014 performance evaluation, Mr. Wimberly gave Mr. Gautreau's performance a score indicating that Mr. Gautreau "exceeds expectations." Mr. Wimberly also indicated that Mr. Gautreau needed to work on his ability to follow through with his job responsibilities. Between 2014 and 2015, the terminal foreman position at EnLink was eliminated and Mr. Gautreau absorbed the duties of that position. In 2015, Mr. Wimberly was promoted, and Chad Vaughn replaced him in 2016. Mr. Wimberly testified that he did not recommend Mr. Gautreau for the plant manager position. After Mr. Vaughn's promotion, Mr. Gautreau reported directly to Mr. Vaughn. Mr. Vaughn reported to Edwin Cormier, the operations manager, and Greg Gibson, the director of operations.

In 2015, Mr. Vaughn rated Mr. Gautreau's overall performance as "fully meets expectations," but in the subcategory of time management, Mr. Vaughn rated Mr. Gautreau as "partially meets expectations," and noted that Mr. Gautreau needed to do a better job of delegating. Mr. Vaughn rated Mr. Gautreau's leadership as only "partially meets expectations," noting that Mr. Gautreau needed to work on holding people accountable for their responsibilities. Mr. Vaughn testified that Mr. Gautreau struggled to hold the process operators, with whom he previously worked, accountable for their tasks. Mr. Vaughn raised similar concerns in Mr. Gautreau's 2016 performance evaluation, noting that several areas of improvement were needed, "including follow through with requests and time management."

In February of 2017, Mr. Gautreau was placed on a "Performance Improvement Plan" ("PIP"). The February 2017 PIP stated that Mr. Gautreau was "not fulfilling his management position responsibilities under the EnLink standards and guidelines." The PIP cited Mr. Gautreau's failure to complete MOC's[1] timely, failure to follow through on tasks assigned to him, and failure to hold his personnel accountable for their responsibilities.

In May of 2017, EnLink reinstated the terminal foreman position and assigned Mr. Gautreau to that position. In the terminal foreman position, Mr. Gautreau was to focus solely on the terminal side of the plant and would no longer manage the plant operators that he previously worked alongside.

On May 18, 2017, Mr. Gautreau took a leave of absence under the Family Medical Leave Act ("FMLA") for "panic attacks causing significant distress to physical health." Mr. Gautreau's claim for short term disability was denied. In June of 2017, during his FMLA leave, Mr. Gautreau called Kelli Sewell, then Director of Human Resources at EnLink, and reported that a year earlier, Mr. Cormier made

---

[1] MOC stands for "Management of Change," which is a record of a change of material, equipment, or designated procedure.

inappropriate demands to him concerning a former female employee, C.L. Mr. Gautreau communicated that Mr. Cormier demanded Mr. Gautreau place his hands in C.L.'s pants to determine whether she was a man or a woman, and that Mr. Cormier made this demand in the presence of Mr. Vaughn and Mr. Gibson. Mr. Gautreau also told Ms. Sewell that Mr. Cormier made a sexually inappropriate remark to a male intern by asking him to hold something as they walked into a restroom.

Mr. Gautreau returned from leave on July 17, 2017, and began working in the terminal foreman role. His base salary and hours did not change within this role. On or around July 17, 2017, Mr. Gautreau complained to Ms. Sewell that prior to his FMLA leave, Mr. Cormier repeatedly said that Mr. Gautreau was overpaid and that he heard Mr. Cormier say the word "fire" every day.

On September 25, 2017, Mr. Gautreau was placed on another PIP. The PIP cited failure to follow up on tasks and hold his personnel accountable. The PIP specifically noted that Mr. Gautreau allowed a subordinate to complete a task that the subordinate was not qualified to do, and that Mr. Gautreau failed to report a violation to his supervisor.

Mr. Gautreau resigned the day after he received the September 25, 2017 PIP. In his resignation letter, Mr. Gautreau stated that EnLink was an unhealthy place to work because his supervisors allowed "cover ups of what could have been several fatalities by managers not following company safety policy and regulations." The PIP was a leading factor in Mr. Gautreau's decision to resign.

Thereafter, on September 26, 2018, Mr. Gautreau filed this lawsuit alleging that while employed at EnLink, he was subjected to discrimination, harassment, and retaliation, on the basis of his age and sex, of sufficient severity and/or pervasiveness to constitute a hostile work environment, in violation of the Louisiana Employment Discrimination Law ("LEDL"), La. R.S. 23:332. Mr. Gautreau further alleged that

4

EnLink engaged in prohibited reprisals against him in violation of the Louisiana Whistleblower Act ("LWA"), La. R.S. 23:967. Mr. Gautreau also alleged that the actions of Mr. Cormier and Mr. Gibson were extreme and outrageous, and thus they were liable to him for the tort of "intentional infliction of emotional distress."

The defendants filed a motion for summary judgment contending that there were no genuine issues of material fact, and Mr. Gautreau's claims against EnLink under the LEDL and the LWA, and Mr. Gautreau's claims against Mr. Gibson and Mr. Cormier in their personal capacity for intentional infliction of emotional distress, all fail as a matter of law. In support of their motion, the defendants submitted the depositions of Mr. Gautreau, Mr. Wimberly, Mr. Vaughn, and Ms. Sewell. The defendants put forth evidence that plaintiff did not complete tasks, was not forthcoming about incomplete tasks, and had reservations about getting employees to follow his directions because he had worked alongside many of them for years. Based upon the evidence submitted in connection with their motion for summary judgment, the defendants contended that Mr. Gautreau lacked the evidence to establish essential elements for each of his claims.

Mr. Gautreau opposed the motion for summary judgment, attaching his own affidavit, with attachments; his deposition taken in another lawsuit; Mr. Vaughn's deposition; and the defendant's discovery responses, with attachments. Mr. Gautreau also referred to his deposition attached to the defendant's motion for summary judgment.

Following a hearing on the motion for summary judgment, the trial court took the matter under advisement. On January 4, 2021, the trial court issued written reasons for judgment and signed a judgment granting the defendants' motion for summary judgment and dismissing Mr. Gautreau's claims. It is from this judgment that Mr. Gautreau appeals.

## ASSIGNMENT OF ERRORS

Mr. Gautreau contends the trial court committed legal error:

1. By failing to address his claims that he "objected to" illegal activity on the part of EnLink under La. R.S. 23:967(A)(3);

2. By finding that a whistleblower's reports within a company do not constitute "disclosures" under La. R.S. 23:967(A)(1);

3. By finding that his refusal to sexually assault a subordinate employee (C.L.) was not protected under La. R.S. 23:967(A)(3) because the employee was not ultimately assaulted;

4. By finding that discriminatory, age-based comments by his supervisors were inadmissible "stray remarks" and not evidence of age discrimination;

5. By finding that he did not show sufficient temporal proximity between the C.L. incident and the adverse employment actions to which he was subjected;

6. By finding that the harassment to which he was subjected was not based on sex; and

7. By finding that Mr. Cormier's and Mr. Gibson's actions did not rise to the level of intentional infliction of emotional distress.

## LAW AND DISCUSSION

After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966(A)(2).

The burden of proof is on the mover. La. C.C.P. art. 966(D)(1). Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion, the mover's burden does not require him to negate all essential

elements of the adverse party's claim, action, or defense. Rather, the mover must point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, the adverse party must produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1). If, however, the mover fails in his burden to show an absence of factual support for one or more of the elements of the adverse party's claim, the burden never shifts to the adverse party, and the mover is not entitled to summary judgment. *Durand v. Graham*, 2019-1312 (La. App. 1 Cir. 6/12/20), 306 So. 3d 437, 440.

In determining whether summary judgment is appropriate, appellate courts review evidence *de novo* under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. *Reynolds v. Bordelon*, 2014-2371 (La. 6/30/15), 172 So. 3d 607, 610. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. *Durand*, 306 So. 3d at 440.

***LWA Claims***

Mr. Gautreau's first three assignments of error challenge the trial court's dismissal of his claims under the LWA.

The LWA, La. R.S. 23:967, provides in pertinent part:

A. An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law:

(1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law.
(2) Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law.
(3) Objects to or refuses to participate in an employment act or practice that is in violation of law.

7

B. An employee may commence a civil action in a district court where the violation occurred against any employer who engages in a practice prohibited by Subsection A of this Section. If the court finds the provisions of Subsection A of this Section have been violated, the plaintiff may recover from the employer damages, reasonable attorney fees, and court costs.

The LWA protects employees against reprisal from employers for reporting or refusing to participate in illegal work practices. *Derbonne v. State Police Commission*, 2019-1455 (La. App. 1 Cir. 10/14/20), 314 So. 3d 861, 870, writ denied, 2020-01323 (La. 2/17/21), 310 So. 3d 1152. The statute targets serious employer conduct that violates the law. *Causey v. Winn-Dixie Logistics, Inc.*, 2015-0813 (La. App. 1 Cir. 12/23/15), 186 So. 3d 185, 187, writ not considered, 2016-0167 (La. 3/24/16), 190 So.3d 1187. To prevail under the statute, the plaintiff must establish an actual violation of state law; a good faith belief that a violation occurred is insufficient. *Id.*

In addition, the plaintiff must establish that the employer, not simply its employees, violated state law. See *Richardson v. Axion Logistics, L.L.C.*, 780 F. 3d 304, 306 (5th Cir. 2015). See also *Dillon v. Lakeview Regional Medical Center Auxiliary, Inc.*, 2011-1878 (La. App. 1 Cir. 6/13/12), 2012 WL 2154346, at *5 & n. 8 (unpublished), writ denied, 2012-1618 (La. 10/26/12), 99 So. 3d 651 (observing that "it could be concluded that the employer must be the actor who violated the law, in order for there to be a cause of action under" La. R.S. 23:967, and that "there is no indication in the provisions of [La.] R.S. 23:967, in referencing an 'act or practice' of the employer, that such would encompass unauthorized acts of its employees").

Thus, to defeat the defendants' motion for summary judgment as to his LWA claims, Mr. Gautreau must demonstrate that a genuine issue of material fact exists that: (1) EnLink violated Louisiana law through a prohibited workplace practice; (2) he advised EnLink of the violation; (3) he then disclosed or threatened to disclose the prohibited practice or objected to or refused to participate in the prohibited

8

practice; and (4) he was terminated as a result of the threat to disclose or because of the disclosure of the prohibited practice or his objection to or refusal to participate in the prohibited practice. See Melancon v. Town of Amite City, 2018-0442 (La. App. 1 Cir. 9/24/18), 261 So. 3d 7, 10.

Mr. Gautreau alleges EnLink subjected him to reprisal for reporting or refusing to participate in the following activities protected by the LWA:

(1) Mr. Vaughn's act of smoking in restricted areas of the facility, a violation of La. R.S. 40:1291.11;

(2) Mr. Cormier's order that Mr. Gautreau sexually assault subordinate employee C.L. in violation of the LEDL and criminal laws such as La. R.S. 14:43.1 (sexual battery);

(3) EnLink's act of intentionally exceeding the throughput limitations established in its state permits, a violation of the Louisiana Environmental Quality Act, La. R.S. 30:2001, et seq.; and

(4) EnLink's cover-ups of two "near miss" incidents.

In his deposition, Mr. Gautreau testified that he observed multiple instances of Mr. Vaughn smoking inside the plant, in an undesignated smoking area. He indicated that smoking inside of the facility was an unsafe act and a violation of written company policy, but that he was not aware of any Louisiana state laws that Mr. Vaughn violated by smoking in the undesignated areas. According to Mr. Gautreau, he had conversations with human resources and his managers, Mr. Cormier and Mr. Gibson, about Mr. Vaughn's infractions of safety policies in the plant, and these conversations resulted in his performance rating declining in 2016.

Mr. Gautreau also testified that in late 2016, he was standing at the door of Mr. Vaughn's office where Mr. Vaughn and Mr. Cormier were having a conversation. According to Mr. Gautreau, Mr. Cormier directed him and Mr. Vaughn to stick their hands down the pants of C.L., a female employee, "to find out whether or not she was a female or a male." Mr. Gautreau testified that he disengaged himself from the conversation, but later that day ran into Mr. Cormier, who asked whether Mr.

9

Gautreau "under[stood] his direction" and wanted feedback "about whether [C.L. is] packing a penis or not." Mr. Gautreau stated that Mr. Cormier threatened his job by saying "Don't and see what happens." According to Mr. Gautreau, he did not sexually assault C.L.

Mr. Gautreau further testified that in 2016 and 2017, his subordinates reported to him that Mr. Vaughn, Mr. Gibson, and Mr. Cormier were directing them to exceed the plant's permitted throughput rate.[2] According to Mr. Gautreau, he advised Mr. Vaughn that the plant was violating its permits, and Mr. Vaughn told him not to do anything to address the violations. Mr. Gautreau testified that he spoke to EnLink's safety personnel about the overruns, and they ignored him. He then reported the throughput violations to human resources, but did not threaten to further disclose the violations. Mr. Gautreaux also testified that in May of 2017, he reported to his supervisor two incidents involving the potential for near death or explosion ("near miss") that he initially investigated but were covered-up, with the parties involved not being held accountable.

According to Mr. Gautreau, he never disclosed any issues outside of the company.

In its reasons for judgment, the trial court found that La. R.S. 23:967(A)(1), "in requiring that an employee first advise his employer of a violation of state law, requires that employee then disclose or threaten[] to disclose the violation to a third party." The trial court found that the record was devoid of any evidence that Mr. Gautreau disclosed or threatened to disclose Mr. Vaughn's alleged smoking in prohibited areas, EnLink's alleged throughput violations, and the "near miss" events outside of the company, and accordingly granted summary judgment as to these claims. With regard to Mr. Cormier's demand that Mr. Gautreau put his hands down

---

[2] Throughput is the amount of product flowing through the plant. According to Mr. Gautreau, the Louisiana Department of Environmental Quality established the plant's throughput limit to 32,000 barrels per day.

C.L.'s pants, the trial court found that because Mr. Gautreau refused to comply with the demand, there was no actual violation of state law. The trial court further found that said demand was not an employment act or practice, as it was in no way related to the business that EnLink conducted, and accordingly granted summary judgment as to this claim.

Upon *de novo* review, we find that Mr. Gautreau failed to produce evidence that EnLink's alleged act of intentionally exceeding the throughput limitations established in its state permits and its alleged cover-ups of two "near miss" incidents were violations of Louisiana law rather than "safety violations." Thus, with regard to these alleged protected activities, we find that Mr. Gautreau failed to establish that he will be able to meet his burden of proof at a trial on the merits, *i.e.*, that EnLink violated Louisiana law through a prohibited workplace practice.

Mr. Gautreau's allegation regarding Mr. Vaughn's act of smoking in restricted areas of the facility does involve a violation of Louisiana law, namely La. R.S. 40:1291.11(A)(3), which prohibits smoking in "any enclosed area within a place of employment." However, even assuming *arguendo* that Mr. Cormier's demand that Mr. Gautreau put his hands down C.L.'s pants likewise violated Louisiana law, Mr. Gautreau failed to produce evidence that EnLink authorized either Mr. Vaughn's or Mr. Cormier's conduct or that EnLink, as the employer, broke the law. See *Genella v. Renaissance Media LLC*, No. CIV.A.03-623, 2004 WL 113487, at *1 (E.D. La. 1/23/04), aff'd, 115 F. Appx. 650 (5th Cir. 2004).

Thus, the trial court properly granted the defendants' motion for summary judgment with regard to Mr. Gautreau's LWA claims.

**LEDL Claims**

Mr. Gautreau's next three assignments of error address his claims of discrimination under the LEDL.

11

*Age Discrimination Claim*

In his fourth assignment of error, Mr. Gautreau contends the trial court erred by finding that discriminatory, age-based comments by his supervisors were inadmissible "stray remarks" and not evidence of age discrimination. He argues that his deposition testimony, admitted in connection with the defendants' motion for summary judgment, provided sufficient evidence of causation to create a genuine issue of material fact.

The LEDL prohibits employers from discriminating against employees on the basis of age. La. R.S. 23:312. Because Louisiana's prohibition against age discrimination is identical to the federal statute prohibiting age discrimination, Louisiana courts have traditionally looked to federal case law for guidance. *LaBove v. Raftery*, 2000-1394, 2000-1423 (La. 11/28/01), 802 So. 2d 566, 573. Under the burden-shifting framework found in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), in order to establish a prima facie case of employment discrimination based on age, a plaintiff must prove that: (1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge or demotion;[3] and (4) he was either (i) replaced by someone outside the protected class, (ii) replaced by someone younger, or (iii) otherwise discharged because of his age. *Robinson v. Board of Supervisors for University of Louisiana System*, 2016-2145 (La. 6/29/17), 225 So. 3d 424, 431. If the plaintiff can establish a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory purpose for the adverse employment action. *Id.* The defendant must point to admissible evidence in the record, but the burden is one of production, not persuasion. *Id.* If the defendant satisfies its burden of production, the burden shifts back to the plaintiff to show that any non-

---

[3] In the context of an age discrimination case, the protected class is an employee between forty and seventy years of age. *See LaBove*, 802 So. 2d at 573.

discriminatory reasons articulated by the employer are not true reasons, but only pretexts. *Id.* The ultimate burden of proof remains with the plaintiff to prove by a preponderance of the evidence that age was the "but-for" cause of the adverse employment action. *Id.*

Comments are evidence of discrimination only if they are (1) related to the protected class of persons of which the plaintiff is a member; (2) proximate in time to the complained-of adverse employment decision; (3) made by an individual with authority over the employment decision at issue; and (4) related to the employment decision at issue. *Jackson v. Cal-Western Packaging Corp.*, 602 F. 3d 374, 380 (5th Cir. 2010). Comments that do not meet these criteria are considered "stray remarks," and standing alone, are insufficient to defeat summary judgment.[4] *Id.*

In his deposition, Mr. Gautreau testified that in 2017, Mr. Cormier and Mr. Gibson regularly told him that he was old and overpaid. He also testified that Mr. Cormier asked him to have conversations with the experienced employees that he supervised as to their plans to retire and their financial status.

The trial court found that Mr. Gautreau satisfied his burden of creating a genuine issue of fact as to whether he was subjected to an adverse employment action. The trial court further found that there was evidence in the record to create a genuine issue of fact as to whether Mr. Gautreau's working conditions were so intolerable that he was forced to resign. However, the trial court concluded that Mr. Gautreau failed to meet his burden of creating a genuine issue of fact as to whether the comments were related to the employment decision at issue, finding the record to be devoid of any evidence that these comments were derogatory, stereotyping, or suggestive of EnLink's desire to replace him with a younger worker.

---

[4] On appeal, Mr. Gautreau argues that the "stray remarks" doctrine, as applied by the district court, was largely rejected by the United States Supreme Court in *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). However, in *Jackson*, 602 F. 3d at 380 n.27, the court noted that the "stray remarks" doctrine survived the decision in *Reeves*.

13

Based upon our *de novo* review of the record, we find that Mr. Gautreau failed to establish a prima facie case of age discrimination. Mr. Cormier's alleged remarks that Mr. Gautreau was "overpaid" are unrelated to his age. Mr. Cormier's requests that Mr. Gautreau discuss other employees' retirement plans are unrelated to Mr. Gautreau's age and are insufficient to support a claim for age discrimination. See, e.g., *Bodenheimer v. PPG Industries, Inc.*, 5 F. 3d 955, 958 (5th Cir. 1993). Mr. Gautreau's remaining allegation that Mr. Cormier regularly told him he was old fails to create a genuine issue of material fact that such comment was in any way related to his reassignment in May of 2017 to the terminal foreman position or to the conditions he claimed were so intolerable that he was forced to resign. Accordingly, we find the trial court properly granted the defendants' motion for summary judgment with regard to Mr. Gautreau's age discrimination claim.

### Sexual Harassment Claims

In his fifth and sixth assignments of error, Mr. Gautreau contends the trial court erred in dismissing his sexual harassment claims.

Louisiana Revised Statutes 23:332 provides in pertinent part:

A. It shall be unlawful discrimination in employment for an employer to engage in any of the following practices:

(1) Intentionally fail or refuse to hire or to discharge any individual, or otherwise to intentionally discriminate against any individual with respect to compensation, or terms, conditions, or privileges of employment, because of the individual's race, color, religion, sex, or national origin.

(2) Intentionally limit, segregate, or classify employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities, or otherwise adversely affect the individual's status as an employee, because of the individual's race, color, religion, sex, or national origin.

Sexual harassment cases are of two types: (1) *quid pro quo* cases, based on threats which are carried out; and (2) bothersome attentions or sexual remarks that are sufficiently severe or pervasive to create a hostile work environment. See

*Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 751, 118 S. Ct. 2257, 2264, 141 L.Ed.2d 633 (1998). Mr. Gautreau has asserted both.

### *Quid Pro Quo Harassment*

In his fifth assignment of error, Mr. Gautreau contends the trial court erred in finding that he did not show sufficient temporal proximity between the C.L. incident and the adverse employment actions to which he was subjected.

To establish a *quid pro quo* harassment claim, a plaintiff must show a causal nexus between the acceptance or rejection of a supervisor's "sexual harassment" and a resulting "tangible employment action." *Frensley v. North Mississippi Medical Center, Inc.*, 440 F. Appx. 383, 386 (5th Cir. 2011) (per curiam). Temporal proximity evidence can be considered along with other circumstances in deciding causation. *Id.* at 387. In *Frensley*, the U.S. Fifth Circuit recognized that approximately five weeks between an invitation to a supervisor's home and elimination of the plaintiff's position, along with other evidence in the case, was insufficient to raise an issue of material fact as to causation.

Mr. Gautreau's claim of *quid pro quo* sexual harassment is based upon the following. In 2016, Mr. Cormier directed Mr. Gautreau to stick his hands down C.L.'s pants, and when Mr. Gautreau refused, Mr. Cormier stated, "Don't and see what happens."[5] Thereafter, in May of 2017, Mr. Gautreau was reassigned to the position of terminal foreman. Then, in September of 2017, he resigned.

The trial court found that Mr. Gautreau failed to meet his burden of showing a temporal link between his alleged refusal to meet Mr. Cormier's demand that he place his hand down C.L.'s pants, and his reassignment to the terminal foreman position roughly a year later; such events were not proximate enough in time to establish a causal link.

---

[5] Mr. Gautreau testified that he was not sure when this incident took place. He reported the incident to Ms. Sewell in June of 2017, indicating it had happened a year earlier. In his deposition, he testified that it happened in late 2016.

Based upon our *de novo* review of the record, we find that Mr. Gautreau has not provided sufficient summary judgment evidence to create a genuine issue of material fact that he suffered a "tangible employment action" that resulted from his refusal to meet Mr. Cormier's demand that he place his hand down C.L.'s pants. The trial court properly granted summary judgment as to Mr. Gautreau's *quid pro quo* sexual harassment claim.

### Hostile Work Environment

Mr. Gautreau's sixth assignment of error contends the trial court erred by finding that the harassment to which he was subjected was not based on sex.

To prevail in a sexual harassment claim based on a hostile work-environment, the plaintiff must assert and prove: (1) he belongs to a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was motivated by discriminatory animus (sex); (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take proper remedial action. *Assamad v. Percy Square and Diamond Foods, L.L.C.*, 2007-1229 (La. App. 1 Cir. 7/29/08), 993 So. 2d 644, 648, writ denied, 2008-2138 (La. 11/10/08), 996 So. 2d 1077. The type of conduct constituting sexual harassment includes unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature. *Id.*

Every act of harassment, although reprehensible, does not necessarily give rise to a hostile work-environment claim. To be actionable, the harassment must be sufficiently severe or pervasive as to alter the conditions of the victim's employment and create an abusive, hostile environment. *Assamad*, 993 So. 2d at 648. In general, hostile work-environment harassment is characterized by multiple and varied incidents of offensive conduct which have the cumulative effect of creating a hostile working environment for the employee thus victimized. *Id.*

A harassment claim does not prohibit all verbal or physical harassment in the

16

workplace; it is directed only at discrimination because of sex. *St. Romain v. State, through the Department of Wildlife & Fisheries*, 2003-0291 (La. App. 1 Cir. 11/12/03), 863 So. 2d 577, 587, <u>writ denied</u>, 2004-0096 (La. 3/26/04), 871 So. 2d 348. To prove that a hostile work environment claim is based on sex, the critical issue is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed. *Id.*

Mr. Gautreau alleges that the following instances of harassment support his claim of a hostile work environment:

(1) He was ordered by Mr. Cormier to sexually assault C.L., which was coupled with a threat;

(2) He was subjected to continuous comments about his sexual performance, including threats to call his wife to discuss same; and

(3) Mr. Vaughn showed him a nude photo on his phone.

He further argues that he was subject to other harassment, although not explicitly linked to sex, that contributed to a hostile work environment and may be considered along with the above explicitly sexual acts in determining whether he was subjected to a hostile work environment. In support of this argument, Mr. Gautreau cites *Fitzgerald v. Henderson*, 251 F.3d 345 (2d Cir. 2001), and *Hicks v. Gates Rubber Co.*, 833 F.2d 1406 (10th Cir. 1987). However, we do not find these cases persuasive as this court requires the type of conduct constituting sexual harassment be "of a sexual nature." *Assamad*, 993 So. 2d at 648. Thus, we consider only the instances of conduct "of a sexual nature" in evaluating Mr. Gautreau's claim for sexual harassment based on a hostile work-environment.

In addition to the incident involving C.L. discussed above in connection with Mr. Gautreau's claim of quid pro quo sexual harassment, Mr. Gautreau relies upon his deposition testimony that following the incident involving C.L., Mr. Cormier made a comment to Mr. Gautreau that "coffee impedes your sexual performance," and threatened to call Mr. Gautreau's wife to talk to her about Mr. Gautreau's sexual

17

performance and coffee intake. According to Mr. Gautreau, this happened "several, multiple, dozens of times." In Mr. Gautreau's opinion, Mr. Cormier did not make these comments because Mr. Gautreau was a man, but because "he's got a problem." According to Mr. Gautreau, Mr. Cormier was "[a] typical bully and sexual predator." Mr. Gautreau also testified that Mr. Vaughn showed him a picture of a naked woman that Mr. Vaughn was "chasing" in Mr. Gautreau's "neck of [the] woods."

The trial court found that Mr. Gautreau was unable to satisfy his burden of showing that the alleged conduct was motivated by discriminatory animus based on his sex. The trial court further found that the alleged conduct did not rise to the level of being so severe or pervasive that it altered the terms of Mr. Gautreau's employment. As such, the trial court granted the defendants' motion for summary judgment.

Upon *de novo* review, we find that Mr. Gautreau failed to produce factual support sufficient to establish the existence of a genuine issue of material fact as to an essential element of his claim for sexual harassment based on a hostile work-environment, *i.e.*, that the harassment was motivated by discriminatory animus (sex). Mr. Gautreau admitted that Mr. Cormier's comments and conduct had nothing to do with discrimination against him because he is a man. Rather, Mr. Gautreau testified that Mr. Cormier made the comments because he was a bully. While crude, Mr. Gautreau's comments and conduct were unrelated to discrimination based on Mr. Gautreau's sex. Nor did Mr. Gautreau establish that Mr. Vaughn's conduct related to discrimination because of sex. Thus, the trial court properly granted the defendants' motion for summary judgment as to Mr. Gautreau's claim for sexual harassment based on a hostile work-environment.

### Intentional Infliction of Emotional Distress Claims

In his seventh assignment of error, Mr. Gautreau contends the trial court erred in finding that Mr. Cormier's and Mr. Gibson's actions did not rise to the level of

18

intentional infliction of emotional distress.

In order to recover for intentional infliction of emotional distress, a plaintiff must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct. *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991). The conduct must be so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community. *Id.* Disciplinary action and conflict in a pressure-packed workplace environment, although calculated to cause some degree of mental anguish, is not ordinarily actionable. *Id.* at 1210. Recognition of a cause of action for intentional infliction of emotional distress in a workplace environment has usually been limited to cases involving a pattern of deliberate, repeated harassment over a period of time. *Id.* The actions of disciplinary review, the assigning of difficult tasks, and the reassigning of employees to more stressful positions in and of themselves do not rise to a level of outrageous conduct under *White*. *Northern v. State, ex rel. Louisiana Dept. of Revenue*, 2015-0226 (La. App. 1 Cir. 11/6/15), 2015 WL 6839998, at *6 (unpublished).

Mr. Gautreau contends that Mr. Cormier's and Mr. Gibson's continuous harassment of him, threats against him, assignment of degrading work, and general bullying of him were sufficient to show intentional infliction of emotional distress. The trial court found that the conduct of Mr. Cormier and Mr. Gibson did not rise to the level of being severe and outrageous such that it would give rise to such a claim.

In addition to the conduct discussed above in connection with Mr. Gautreau's other claims, Mr. Gautreau testified that Mr. Cormier and Mr. Gibson harassed him by requiring Mr. Vaughn to "grade [him] from A to F on his performance...like being

19

in pre-school." He further testified that they called him at 5:00 a.m. to ask him if he knew where Mr. Vaughn was, and that Mr. Cormier called his house just to see if he would answer the phone. Mr. Gautreau also testified that Mr. Gibson assigned him the task of picking up "big [expletive] rocks" in the parking lot.

Based upon our *de novo* review of the record, we find that Mr. Gautreau has not shown that the defendants' conduct was extreme or outrageous to a degree calculated to cause severe emotional distress to a person of ordinary sensibilities, or that the defendants desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from their conduct. See *White*, 585 So. 2d at 1211. Accordingly we find that Mr. Gautreau's claim for intentional infliction of emotional distress was properly dismissed by the trial court.

## CONCLUSION

For the foregoing reasons, we affirm the January 4, 2021 summary judgment in favor of EnLink Midstream Operating GP, LLC, EnLink Midstream Operating, LP, Edwin Cormier, Jr., and Gregory Gibson, dismissing the claims in Jeffrey Gautreau's petition for damages with prejudice. All costs of this appeal are assessed to the plaintiff, Jeffrey Gautreau.

**AFFIRMED.**